1    JEFFER, MANGELS, BUTLER & MARMARO LLP
     MARTIN H. ORLICK (Bar No. 083908), mho@jmbm.com
2    MATTHEW S. KENEFICK (Bar No. 227298), msk@jmbm.com
     Two Embarcadero Center, Fifth Floor
3    San Francisco, California 94111-3824
     Telephone:    (415) 398-8080
4    Facsimile:    (415) 398-5584

5

6    Attorneys for Plaintiff BERWICK-KRAUSZ, a California general
     partnership
7

8                      UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11   BERWICK-KRAUSZ, a California general        CASE NO.
     partnership,
12                                               COMPLAINT FOR DECLARATORY
                    Plaintiff,                   RELIEF
13
         v.
14                                               DEMAND FOR JURY TRIAL
     TRU 2005 RE I, LLC, a Delaware limited
15   liability company,

16                  Defendant.

17

18         Plaintiff Berwick-Krausz, a California general partnership ("Landlord") complains

19   against TRU 2005 RE I, LLC, a Delaware limited liability company, ("Tenant"), as follows:

20                           GENERAL ALLEGATIONS

21                                 Jurisdiction

22         1.    This Court has diversity jurisdiction pursuant 28 U.S.C. § 1332.

23         2.    Landlord is a California general partnership consisting of the Krausz Family Trust,

24   under agreement dated March 12, 1998, acting by and through F. Ron Krausz, designated agent for

25   Dorian Krausz, sole trustee, and the Berwick Family Trust, under agreement dated April 3, 1995,

26   acting by and through Andrew S. Berwick, Jr., Trustee. F. Ron Krausz, Dorian Krausz, and

27   Andrew S. Berwick, Jr. are each citizens of the State of California.

28         3.    Landlord is informed and believes, and on that basis alleges that at all times herein

PRINTED ON
RECYCLED PAPER

618045v1

─────────────────────────────
COMPLAINT FOR DECLARATORY RELIEF

1    mentioned, Tenant is a Delaware limited liability company with its principal place of business

2    located at One Geoffrey Way, Wayne, New Jersey.

3        4.    The amount in controversy exceeds the sum or value of $75,000.

4                                    **Venue**

5        5.    All actions complained of herein took place within the jurisdiction of the United

6    States District Court, Northern District of California.  Accordingly, venue is invoked pursuant to 28

7    U.S.C. § 1391(a).

8                            **Intradistrict Assignment**

9        6.    A substantial part of the events or omissions giving rise to the claims set forth in this

10   Complaint occurred in the City of San Jose, County of Santa Clara.  Specifically, the real property

11   which is the subject of this action is located at 1082 Blossom Hill Road, San Jose, California (the

12   "Subject Property").  The Lease (defined herein) was entered into, and the obligations arising

13   thereunder were to be performed, in the County of Santa Clara, State of California.

14                           **FACTUAL BACKGROUND**

15                                **The Lease**

16       7.    On or about June 16, 1972, Amos Z. Krausz and Andrew S. Berwick, Jr. on the one

17   hand, and Toys R Us Covina, Inc. on the other, entered into that certain real property lease for

18   portions of the Subject Property (the "Lease").  A true and correct copy of the Lease is attached

19   hereto as **Exhibit A** and is incorporated herein by reference as if fully set forth.

20       8.    Landlord has duly performed all conditions precedent on its part required to be

21   performed under the terms of the Lease, except as to those conditions for which performance was

22   excused by Tenant's material breaches.

23       9.    Landlord is the successor in interest under the Lease to Amos Z. Krausz and Andrew

24   S. Berwick, Jr.

25       10.   Landlord is informed and believes, and on that basis alleges that Tenant is the

26   successor in interest under the Lease to Toys R Us Covina, Inc.

27       11.   Pursuant to Article 2 of the Lease, the initial term of the lease was for 25 years from

28   the "Date of Occupancy," as that term is defined in Article 9 of the Lease.  Article 2 of the Lease

JMBM | Jeffer Mangels
      Butler & Marmarou

1  provides the following:

2  >  TERM. The initial term of this Lease shall commence upon the "Date
   >  of Occupancy", as that term is defined in Article 9 hereof, and shall
3  >  terminate on the 31st day of January after the completion of the
   >  twenty-fifth (25th) full "lease year", as said term is hereinafter
4  >  defined; however, the term of this Lease may be extended as provided
   >  in Article 11 hereof. The words "lease term", as used in this Lease,
5  >  shall include the initial term of this Lease, as hereinabove described,
   >  and any extensions thereof pursuant to said Article 11.
6

7    12.    The Date of Occupancy, as that term is defined in the Lease, occurred on October 15,

8  1972.

9

10    13.    The Lease expressly states time is of the essence. Article 46 of the Lease provides

   the following:
11
   >  TIME. Time is of the essence of this Lease and each and all of its
12 >  provisions.

13    14.    At the end of the term of the Lease, the tenant is required to turnover the leased

14 premises to Landlord. Article 35 of the Lease provides:

15 >  END OF TERM. Lessee shall, on the last day of the term or upon the
   >  sooner termination of the term, peaceably and quietly surrender and
16 >  deliver up to Lessor the Demised Premises, broomclean, including all
   >  buildings, alterations, rebuildings, replacements, changes, additions
17 >  and improvements constructed, erected, added or placed by Lessee
   >  thereon, with all fixtures (except trade fixtures installed by Lessee)
18 >  forming a part of the Demised Premises, in good condition and repair,
   >  ordinary wear and tear excepted. Lessee hereby waives any notice
19 >  now or hereafter required by law with respect to vacating the Demised
   >  Premises at any such termination date, except as otherwise set forth in
20 >  the Lease.

21    15.    The Lease also provides if Tenant remains in occupancy beyond the term of the

22 Lease, its leasehold interest shall remain pursuant to the terms of the Lease, on a month to month

23 basis. Article 26 of the Lease provides:

24 >  HOLDING OVER.    In the absence of any written agreement to the
   >  contrary, if Lessee should remain in occupancy of any of the Demised
25 >  Premises after the expiration of the lease term, it shall so remain as a
   >  tenant from month to month and all provisions of this Lease
26 >  applicable to such tenancy shall remain in full force and effect, and
   >  notwithstanding any law, ordinance of statute to the contrary, Lessee
27 >  agrees that its occupancy may be terminated upon thirty (30) days
   >  prior written notice at any time after the expiration of the lease term.

28

JMBM | Jeffer Mangels
Butler & Marmaro LLP

**The Options**

16.     The Lease provides in Article 11 at sections 11.01 and 11.02, for a first ten (10) year renewal period (the "First Option") and a second ten (10) year renewal period (the "Second Option").  To extend the term of the Lease by exercise of either the First Option or the First Option and the Second Option, Tenant was required to provide:  "written notice to Lessor not less than six (6) months prior to the expiration of the initial term hereof."  Article 11 of the Lease provides the following:

> OPTION TO EXTEND LEASE.  11.01.  Provided the Lessee shall not be in default at the time for exercising its options of any of the provisions of this Lease, Lessee shall have the option to extend the term of this Lease for an additional period of ten (10) years upon the same terms and conditions as contained in this Lease, which option shall be exercised by written notice to Lessor not less than six (6) months prior to the expiration of the initial term hereof.

> 11.02   Provided the Lessee shall not be in default at the time for exercising its options of any of the provisions of this Lease, Lessee shall have the option to extend the term of this Lease for an additional period of ten (10) years upon the same terms and conditions as contained in this Lease, which option shall be exercised by written notice to Lessor not less than six (6) months prior to the expiration of the initial term hereof…

17.     Pursuant to the terms of the Lease, on or before six (6) months prior to the expiration of the initial term of the Lease, Tenant was required to inform Landlord in writing of the exercise of the First Option or the First Option and Second Option.

18.     With a Date of Occupancy of October 15, 1972, the initial term of the Lease expired on January 31, 1998.

19.     In a letter dated September 11, 1996, Tenant notified Landlord in writing that it would exercise the First Option, not the Second Option, thereby extending the term of the Lease by ten (10) years.  Thus, the initial term of the Lease commenced on October 15, 1972 and expired on January 31, 1998, and the exercised ten (10) year renewal period of the Lease commenced on February 1, 1998 and expired on January 31, 2008.  A true and correct copy of this letter dated September 11, 1996 is attached hereto as **Exhibit B** and is incorporated herein by reference as if fully set forth.

///

PRINTED ON
RECYCLED PAPER

**The Dispute**

20.     In a letter dated June 12, 2007, Tenant purported to exercise "its option to extend the term... (of the Lease) to January 31, 2018." A true and correct copy of this letter is attached hereto as **Exhibit C** and is incorporated herein by reference as if fully set forth.

21.     Landlord disputes the validity of Tenant's purported June 12, 2007 exercise of an option to extend the Lease. Specifically, Landlord contends either the First Option or First Option and Second Option were required to be exercised on or before six (6) months prior to the expiration of the initial term of the Lease of January 31, 1998. Tenant only exercised the First Option and not the Second Option during this period, and therefore, has no right to exercise the Second Option.

**FIRST CLAIM FOR RELIEF**
(Declaratory Relief)

22.     Landlord incorporates by reference the allegations contained in Paragraphs 1 through 21 above.

23.     An actual controversy has now arisen between Landlord and Tenant, concerning their respective rights and obligations under the Lease. There is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Specifically, Landlord contends as follows:

A.     To exercise either the First Option, or the First Option and the Second Option, Tenant was required to provide Landlord with written notice of such exercise on or before six (6) months prior to the expiration of the initial term of the Lease of January 31, 1998 – thus, such notice was required to be given on or before July 31, 1997;

B.     Tenant only exercised the First Option, and not the First Option and Second Option, by written notice dated September 11, 1996;

C.     Tenant's June 12, 2007, notice of exercise of the Second Option was untimely and therefore ineffective; and

D.     The term of the Lease expires on January 31, 2008, and Tenant is required to turnover to Landlord the leased premises on or before that date pursuant to Article 35 of the Lease. If Tenant fails to do so, then Tenant will be deemed a holdover tenant and, pursuant to Article 26 of

PRINTED ON
RECYCLED PAPER

618045v1

- 5 -                COMPLAINT FOR DECLARATORY RELIEF

JMBM | Jeffer Mangels Butler & Marmaro LLP

1    the Lease, its leasehold interest shall remain pursuant to the terms of the Lease, on a month to

2    month basis.

3        24.    Landlord is informed and believes, and based thereon alleges, that Tenant disputes

4    these contentions and contends as follows:

5        A.    In order to exercise the First Option, Tenant was required to provide

6    Landlord with written notice of such exercise on or before six (6) months prior to the expiration of

7    the initial term of the Lease of January 31, 1998 and Tenant could exercise the Second Option by

8    providing Landlord with written notice of such exercise on or before six (6) months prior to the

9    expiration of the ten (10) year renewal period of January 31, 2008 – thus, such notice was required

10    to be given on or before July 31, 2007;

11        B.    Tenant exercised the First Option, by written notice dated September 11,

12    1996;

13        C.    Tenant's June 12, 2007, notice of exercise of the Second Option was valid;

14    and

15        D.    The term of the Lease expires on January 31, 2018, and Tenant is not

16    required to surrender possession of the leased premises on or before January 31, 2008, pursuant to

17    Article 35 of the Lease.

18        25.    Landlord now requires a judicial determination of the parties' rights and obligations

19    with respect to the Lease.  Landlord has no speedy or adequate remedy at law for resolution of this

20    dispute.  Landlord is therefore entitled to a judicial declaration of this Court in accordance with the

21    facts and contentions set forth in paragraph 23 above.  A judicial determination is necessary and

22    appropriate at this time in order that Landlord may timely ascertain its rights and obligations as

23    described herein.

24        WHEREFORE, Landlord prays for judgment as set forth herein.

25                     **PRAYER FOR RELIEF**

26        WHEREFORE, Landlord prays for judgment against Tenant as follows:

27        1.    For a declaration that:

28        A.    To exercise either the First Option, or the First Option and the Second

JMBM | Jeffer Mangels
Butler & Marmaro LLP

1   Option, Tenant was required to provide Landlord with written notice of such exercise on or before

2   six (6) months prior to the expiration of the initial term of the Lease of January 31, 1998 – thus,

3   such notice was required to be given on or before July 31, 1997;

4           B.      Tenant only exercised the First Option, and not the First Option and Second

5   Option, by written notice dated September 11, 1996;

6           C.      Tenant's June 12, 2007, notice of exercise of the Second Option was untimely

7   and therefore ineffective; and

8           D.      The term of the Lease expires on January 31, 2008, and Tenant is required to

9   turnover to Landlord the leased premises on or before that date pursuant to Article 35 of the Lease.

10   If Tenant fails to do so, then Tenant will be deemed a holdover tenant and, pursuant to Article 26 of

11   the Lease, its leasehold interest shall remain pursuant to the terms of the Lease, on a month to

12   month basis.

13           2.      For costs of suit herein incurred; and

14           3.      For such other and further relief as the Court may deem proper.

15   DATED: September 4, 2007        JEFFER, MANGELS, BUTLER & MARMARO LLP

16           MARTIN H. ORLICK
        MATTHEW S. KENEFICK

17

18           By: _____

19                   MARTIN H. ORLICK
        Attorneys for Plaintiff BERWICK-KRAUSZ, a
        California general partnership

20           **JURY DEMAND**

21           Plaintiff demands a jury trial on all issues so triable.

22   DATED: September 4, 2007        JEFFER, MANGELS, BUTLER & MARMARO LLP

23           MARTIN H. ORLICK
        MATTHEW S. KENEFICK

24

25           By: _____

26                   MARTIN H. ORLICK
        Attorneys for Plaintiff BERWICK-KRAUSZ, a
        California general partnership

27

28

JMBM | Jeffer Mangels
Butler & Marmaro LLP

# EXHIBIT A

6787
NHK

SAN JOSE

THIS LEASE made and entered into as of this 16th day

of    June    1972 between AMOS Z. KRAUSZ, an individual, and

ANDREW S. BERWICK, JR., an individual, jointly and severally

having an office at 851 Burlway Road, Burlingame, California 94010,

(who, together, are hereinafter referred to as "Lessor") and

TOYS R US COVINA, INC., a California corporation having an office

c/o Interstate Stores, Inc., at 111 Eighth Avenue, New York;

New York 10011 (hereinafter referred to as "Lessee").

W I T N E S S E T H :

THAT, in consideration of the rents, covenants and

conditions herein set forth, Lessor and Lessee do hereby covenant,

promise and agree as follows:

1.  DEMISED PREMISES.  Lessor does hereby demise unto

Lessee and Lessee does hereby  take from Lessor, for the term

hereinafter provided, and any extension(s) thereof, certain

property located in the City of San Jose, County of Santa Clara,

State of California being the cross-hatched area on Exhibit "A",

attached hereto and made a part hereof, and more particularly

described in Exhibit "A-1", attached hereto and by this reference

made a part hereof.  Said property is a part of larger parcels, consisting

of Phase I and Phase II all as outlined in red on Exhibit "AA" and more

particularly described in Exhibit "A-2", attached hereto and by this re-

ference made a part hereof and sometimes hereinafter referred to as the

"Shopping Center".    Lessor shall, at its expense, construct a

completed store unit containing approximately   35,029   square

feet of ground floor area including dock area, and  8,787   square

- 1 -

EXHIBIT A

feet of mezzanine area, ("Toy Store") and "Facilities" (as herein-
after defined), as designated on Exhibit "A". The Toy Store
is hereinafter somtimes referred to as "Demised Premises". "Facilities"
are somtimes herein referred to as the "Common Area".

Lessor covenants, warrants and agrees that the Lessee shall
have the use of the Common Area for ingress, egress of pedestrians,
vehicles and for parking, in common with all other tenants of the
Shopping Center.

2.  TERM.   The initial term of this Lease shall
commence upon the "Date of Occupancy", as that term is defined
in Article 9 hereof, and shall terminate on the 31st day of
January after the completion of the twenty-fifth (25th) full
"lease year", as said term is hereinafter defined; however, the
term of this Lease may be extended as provided in Article 11
hereof.  The words "lease term", as used in this Lease, shall
include the initial term of this Lease, as hereinabove described,
and any extensions thereof pursuant to said Article 11.

3.  ANNUAL MINIMUM RENTAL.   Lessee agrees to pay
Lessor rental for the demised premises as follows:

(a)  The basic minimum annual rental shall be ONE HUNDRED
TWO THOUSAND ($102,000) DOLLARS in lawful money of the United
States of America, which Lessee agrees to pay to Lessor,
without deduction or offset, in equal monthly payments of
Eighth Thousand Five Hundred ($8,500.00) Dollars in advance,
on the first day of each and every calendar month succeeding
the Date of Occupancy.

(b)  Except as otherwise provided in this Lease, Lessee

- 2 -

agrees to pay the rental herein reserved at the times herein set forth, without deduction or offset, to Lessor in lawful money of the United States of America at P.O. Box 77143, San Francisco, California 94107; or to such other person and/or at such other place as Lessor may, from time to time, designate in writing.

4. NEW BUILDING BY LESSOR.   Promptly after the execution hereof, Lessor shall take all necessary steps to obtain the approval of the Site Plan and Use Permit by the City of San Jose  for a Toy Store and Facilities in accordance with the final Plans and Specifications submitted to, or to be submitted to, Lessor by Field & Silverman, "Architects", 113 North San Vicente Boulevard, Beverly Hills, California, hereinafter called "Architects".   Said plans and specifications are referred to in this Lease as either Plans or Plans and Specifications.

Promptly after Lessor has obtained the approvals called for in the preceding paragraph hereof, Lessor shall apply for and obtain a Building Permit for said Toy Store and Facilities. In the event said approvals and Building Permit shall not have been issued on or before July 31, 1972 Lessee shall have the option, exercisable by written notice to Lessor at any time thereafter, but prior to commencement of construction, to terminate this Lease.

In the event Lessor does not acquire title to the property by  July 15, 1972, and furnish evidence to Lessee of such acquisition by written notice prior to July 30, 1972, this Lease shall automatically cease and terminate, and thereafter

- 3 -

neither party hereto shall have any further liability to the other with respect to the matters contained in this Lease.

The Demised Premises and Facilities shall be ready and delivered to Lessee for fixturing as provided in Article 6 hereof, on or before August 15, 1972, subject to delays caused by earthquake, riots, strikes, fires or other casualty, government restrictions and regulations, including matters beyond the reasonable control of Lessor, provided, however, in the event that physical construction of the Toy Store and Facilities and the improvements referred to in Article 7.01 hereof shall not have been commenced prior to August 1, 1972, Lessee shall have the option, exercisable by written notice to Lessor at any time thereafter, but      prior to the commencement of construction to terminate this Lease. In the event that the Demised Premises shall not have been completed and the Lease term shall not have commenced prior to September 1, 1973, notwithstanding any one or more of the delays mentioned in this Lease, then Lessee shall have the option, exercisable by written notice to Lessor at any time thereafter, but prior to completion of the Demised Premises and Facilities to terminate this Lease.

Lessor shall, at least forty-five (45) days prior to the date the Demised Premises and Facilities shall be completed for delivery of possession, give written notice to Lessee of the date upon which it is expected the Demised Premises and Facilities will be completed and possession delivered to Lessee. Lessee shall have the

-4-

right to rely upon such date in planning for its opening and in the event Lessor cannot meet such date for any reason whatsoever (except for delays resulting from strikes, acts of God or anything occurring beyond Lessor's control, in which event, Lessor will immediately take such reasonable steps and initiate such action that is reasonable to overcome the delay), it shall reimburse Lessee for any out-of-pocket expenses incurred by reason of said reliance, subject, however, to the provisions of Article 9.

5.  PLANS AND SPECIFICATIONS.  Lessor shall proceed at its sole cost and expense with the construction of the Toy Store and Facilities in accordance with Plans and Specifications prepared at Lessee's expense by the Architects.  The parties hereto acknowledge that the plans and specifications shall be substantially the same as the ones submitted by "Architects" in their plans and specifications for Hayward, California, initialed by the Lessor and Lessee hereto and incorporated herein by reference, as Exhibit "C". / Lessee agrees to cooperate with Rudolph & Sletten, Inc. (Lessor's contractor) to incorporate whenever possible in Lessee's sole judgement, such modifications to plans that may result in reduced construction costs to Lessor.  The work to be performed by Lessor, at its cost, shall also include all site work, landscaping, sewer and utilities provisions and connections, permits, licenses, interim construction interest and fees, the cost of a topographical and boundary survey and soil tests if required, or any other costs incurred by Lessor that are required to construct said building and Facilities (except for cost of all architectural and engineering fees and charges which Lessee agrees to pay) and provide Lessee with parking facilities for not less than 270 cars in the areas shown on Exhibit "A" annexed hereto.

- 5 -

Lessor represents and warrants that the Demised Premises and Facilities, when completed, shall be constructed by Lessor in accordance with the Plans and Specifications.  Lessee represents and warrants that such Plans shall comply with the requirements of all applicable government/having jurisdiction thereof.  Upon completion, Lessor shall deliver to Lessee a complete set of "as built" Plans and Specifications.

Any revision and/or correction to the Plans and Specifications which may be required by the City, Lessee or Lessor shall be submitted to "Architects", and upon written approval by Lessor and Lessee, shall be incorporated in said Plans and Specifications, which approval shall not be unreasonably withheld.  The construction work set forth in this Lease is designated on Plans and/or Plans and Specifications to be prepared by Architects, initialed by Lessee and Lessor and incorporated herein by reference as Exhibit "D". The construction work herein above set forth is designated on Exhibit "A" as the Toy Store and Facilities portion of Phase I of the Shopping Center.

6.  ADVANCE POSSESSION FOR FIXTURING.  During construction, for a period of forty-five (45) days prior to completion

-6-

(subject to delays caused by earthquake, riots, strikes, fire or other casualty, governmental restrictions or regulations, including matters beyond reasonable control of Lessor,

Lessee shall have the right, rent-free, to enter the Toy Store in order to install its fixtures and store merchandise, train personnel and conduct any other activity preparatory to its opening for business. Such entry shall be at times and in a manner which does not interfere with the progress of construction but shall not be construed as acceptance of the Demised Premises under the provisions of this Lease, or as a waiver of any of the provisions hereof. Such entry shall, except in the case of wilful act or negligence of Lessor, its agents, employees or contractors, be at Lessee's sole and own risk.

7.    PARKING AND OTHER FACILITIES.

7.01.  Prior to the Date of Occupancy, Lessor shall construct on the Phase I portion of the Shopping Center, lighting facilities, landscaped areas, sidewalks, aisles, service drives, driveways, streets, curb cuts, loading areas and parking area sufficient to accommodate a minimum of 270 cars in standard size marked off parking spaces (all of which are sometimes herein referred to as "Facilities"), as shown on Exhibit "A". In addition, all approaches, entrances, exits, sidewalks and roadway shown on said Exhibit "A" shall be completed as required in accordance with the said Exhibit "A". The Facilities shall, during the lease term, be and remain, except as may be specifically permitted otherwise in this Lease, substantially as set forth in said Exhibit "A" except as may be otherwise required by the City of San Jose. All sidewalks ————————————————————————

-7-

and aisles and all service drives, driveways, streets and parking areas shall be lighted, graded, leveled, paved and marked for the orderly distribution of automobiles, as set forth on Exhibit "A". All of the Facilities shall be constructed in a good and workmanlike manner, using first-quality materials.

7.02    Lessor shall keep the Common Area of the entire Shopping Center in good order and repair and adequately illuminate during such hours as the Toy Store shall be open for business and for one (1) hour thereafter.   Lessor's obligation hereunder with respect to the Common Area (as herein defined) (sometimes herein referred to as "Facilities") shall include all maintenance including such items as keeping the same free and clear of debris, obstructions, water, gardening, landscaping, painting, striping, lighting, sanitary control, removal of garbage, repairing and resurfacing the blacktop surface, repairing drainage facilities, culverts, sewer lines, water supply lines and any other defects.

7.03 (A)   Lessee shall pay to Lessor semi-annually, "Lessee's Share" (as hereinafter defined) of the "Operating Costs" (as hereinafter defined) of the Common Area.   Lessee's Share shall be the proportion that the square foot ground floor area of the Toy Store bears to the square foot floor area of all the stores and buildings in the Shopping Center, (including Toy Store).   Any payment required hereunder of Lessee shall be made by Lessee with thirty (30) days after submission of a bill therefor by Lessor and if requested by Lessee, Lessor shall furnish Lessee with bills, invoices or other proof showing the Operating Cost of the Common Area.   If Lessee shall fail to pay such bills, Lessor may, after ten (10) days' notice to Lessee, add the sum



-8-

to subsequent installment(s) of rent becoming due hereunder. The "Operating Costs" shall be limited to the costs of Lessor's obligations under this Article "7".

(B)  The Common Area or Facilities shall mean all of those portions of the Shopping Center, including Phase II, when completed, which shall not have any building(s) erected thereon. The "Operating Costs" of the Common Area or Facilities, as herein defined, shall mean the total cost of maintaining and operating the same including, without limitation, gardening and landscaping, the cost of public liability and property damage insurance, repairs, painting, striping, lighting, sanitary control removal of trash, rubbish, garbage and other refuse.

7.04.  If Lessor shall fail to keep, maintain or repair the Common Area, and such failure shall continue for ten (10) days after written notice thereof (or such shorter period as shall be necessitated by the nature of the default, or no notice and grace if the condition shall constitute an emergency), then Lessee may cure such default at the expense of Lessor and deduct the cost thereof from the next succeeding installment(s) of rent becoming due hereunder.

7.05.  No advertising signs or advertising displays shall be erected or maintained on the Common ARea of the Shopping Center without Lessee's prior written consent, except as shown on Exhibit "A". However, any other tenant, occupying space within the Shopping Center may install any non-moving, non-blinking or non-flashing signs on the building it shall occupy.

8.01  REAL ESTATE TAXES:  Lessee shall pay, as additional rent, "Lessee's share" of the real estate taxes and assessments upon the Demised Premises and facilities of the Shopping Center only for each tax year included within the period commencing with the Date of Occupancy and ending with the expiration of the initial or any renewal term of this Lease.

"Lessee's share" of the real estate taxes and assessments upon the Demised Premises for any tax year shall be the sum of the real estate taxes upon the Demised Premises for said tax year if the Demised Premises shall be separately assessed, and alternately, if it is not separately assessed, it shall be the product of the real estate taxes and assessments upon all of the buildings within the Shopping Center multiplied by "Lessee's fraction".  "Lessee's fraction" as used in this Lease shall mean that fraction, the numerator of which shall be the number of square feet of ground floor area in the Toy Store and the denominator of which shall be the number of square feet of ground floor area within all the buildings in the Shopping Center.  The assessments on all the build- ings of the Shopping Center jointly assessed shall be deemed to be uniformly assessed on a square foot floor area basis, excluding mezzanine, and an appropriate adjustment shall be made with respect to any buildings within the Shopping Center which do not have a construction reasonably similar to that of the Demised Premises.

*SEE PAGE 10-A.*

"Lessee's share" of the real estate taxes and assessments, upon the facilities, including land for any tax year, shall be the product of the real estate taxes and assessments upon the facili- ties in the Shopping Center multiplied by the "Lessee's fraction" as hereinabove defined.

Notwithstanding any provision of this Article 8 to the contrary,

1.  Until a building on the northeasterly corner of Exhibit "A" of the Shopping Center designated "Vacant Land" shall be completed, Lessee shall not be obligated to pay taxes or assessments on said Vacant Land as shown thereon, and Lessor covenants to pay



the taxes and assessments for the said Vacant Land calculated by multiplying the total real estate taxes and assessments upon the total land of the Shopping Center by a fraction, the numerator of which shall be the square footage of the Vacant Land as shown in Exhibit "A", and the denominator of which shall be the total square footage of the total land of the Shopping Center, and

    2. Until the buildings delineated in Phase II or a reasonably substantial aggregate of ground floor square footage of the same shall be completed on Phase II (for the purposes hereof a reasonably substantial aggregate of ground floor square footage shall be deemed to be not less than the completion of 50% of the square footage of the proposed buildings shown on Phase II in Exhibit "AA"). Lessee shall not be obligated to pay taxes or assessments on Phase II as shown in Exhibit "AA" and Lessor covenants to pay the taxes and assessments thereon calculated by multiplying the total taxes on the land of the Shopping Center by a fraction, the numerator of which shall be the square footage of Phase II as shown in Exhibit "AA" and the denominator of which shall be the total square footage of the total *land in the* Shopping Center.

\* The assessment on the land with the Facilities thereon jointly assessed for any tax year shall be deemed to be uniformly assessed on the basis of the total square footage of ground contained in the Shopping Center.

except only that assessments chargeable to Lessee shall not include any of such improvements now or hereafter installed or in the process of installation in compliance with the requirements of any other tenant or occupant of the Shopping Center and/or in compliance with any applicable rules and regulations of any government authorities having jurisdiction regulating the use of the Shopping Center regarding other tenants of the Shopping Center. If any assessment is payable in installments, the real estate taxes for any tax year shall include only the lowest such installment of such assessment as Lessor shall be permitted to have allocable to said tax year.

For the purposes of this paragraph, taxes upon the signs of any tenant or upon any equipment used in the conduct of the business of any tenant (as distinguished from equipment used in the operation of a building such as heating and air condition equipment) shall not be considered part of real estate taxes, and to the extent that the same shall be included in real estate taxes by any taxing authority and shall be separately assessed, they shall be deducted from real estate taxes before applying the provisions of this paragraph.

8.02. The real estate taxes for any lease year shall be the real estate taxes for the tax year terminating during said lease year. If any lease year shall be greater than or less than twelve (12) months or if the real estate tax year shall be changed, an appropriate adjustment shall be made to carry out the intent of the parties. If there shall be more than one taxing authority, the real estate taxes for any period shall be the sum of the real estate taxes for said period attributable to each taxing authority. If the number of square feet of ground floor of any building shall change during any tax year, the condition existing upon the day as of which real estate taxes are assessed for said tax year shall control. If, upon the assessment day for real estate taxes for any tax year fully or partly included within the term of this Lease, a portion of such assessment shall be attributable to buildings in the process of construction, a fair and reasonable adjustment shall be made to carry out the intent of the parties.

11



8.03.  The real estate taxes upon the Shopping Center (or any part thereof) for any tax year shall mean such amounts as shall be finally determined to be the real estate taxes payable with respect thereto (or said part thereof) for said tax year, that is, the real estate taxes assessed for said tax year less any abatements, refunds or rebates made thereof. For the purpose of determining payments due from Lessee to Lessor in accordance with the provisions of this Article 8:  (i) Prior to the determination of the assessment and the rate for any tax year, the real estate taxes for said tax year shall be deemed to be the real estate taxes for the preceding tax year; (ii) thereafter the real estate taxes for said tax year shall be deemed to be the real estate taxes assessed for said tax year until such time as the same may be reduced by abatement, refund or rebate; and (iii) if any abatement, refund or rebate shall be made for said tax year, the real estate taxes for said tax year shall be deemed to be the real estate taxes as so reduced, plus the expenses of obtaining the reduction, and an appropriate adjustment shall be made in the amount payable from or paid by Lessee to Lessor on account of real estate taxes.

- 12 -

8.04. Lessor shall submit to Lessee copies of the real estate tax bill for each tax year or portion of a tax year included within the term of this Lease. Lessor shall bill Lessee for any amount that may be payable by Lessee pursuant to the provisions of this paragraph. Said bill shall be accompanied by a computation of the amount payable. The amount payable by Lessee hereunder for any tax year shall be payable at least fourteen (14) days before Lessor shall be required to pay real estate taxes to the taxing authority for said tax year, but if Lessee shall not have received a bill therefor at least fourteen (14) days prior to said time for payment, Lessee shall not be required to make payment until fourteen (14) days after the receipt of said bill. (If real estate taxes are payable to any taxing authority for any tax year in installments, the amount payable by Lessee hereunder shall be payable in similar installments and no amounts shall be payable by Lessee on account of installments becoming payable after the expiration of the term of this Lease. If real estate taxes are payable to different taxing authorities for any tax year at different times, an appropriate apportionment shall be made of the amount payable by Lessee for said tax year and the apportioned amount shall be payable at such times.)

8.05. The Lessor, upon request of the Lessee, shall make and prosecute applications for abatement of taxes or, at Lessee's option, Lessee may do so in the name of the Lessor, provided, however, that the reasonable expenses of prosecuting such applications, including legal fees, shall be borne pro rata by the Lessee and Lessor in accordance with the amount of the abatement

- 13 -

respectively applicable to the Demised Premises and Common Area and balance of the Shopping Center. If no abatement is received, or if the abatement received is less than the expense incurred in filing and prosecuting the same, then the reasonable expense incurred in excess of the abatement or refund received shall be borne by the party initiating or pro-securing such application for abatement or making the request for such prosecution.

8.06.    Nothing in this Lease contained shall re-quire the Lessee to pay any capital, stock, franchise, estate, inheritance, gift, succession, capital levy or transfer tax of or levied or assessed against the Lessor, or any income tax or income excess profits or revenue tax.

8.07.    If Lessor shall receive any statement or notice relative to any tax or assessment, Lessor shall promptly after receipt thereof deliver the same to Lessee.

Lessee shall have the privilege, before delinquency occurs, of contesting, objecting to or opposing the legality or validity of any of such taxes, assessments, impositions or charges, provided that prompt notice of such contest, objection or opposition shall be given to Lessor by Lessee at least twenty (20) days before any delinquency, and provided further that such con-test, objection or opposition shall not be carried on or maintained after the aforesaid time limit for the payment by Lessee of said obligations, unless Lessee shall have duly paid the amount involved under protest or shall procure and maintain a stay of all pro-ceedings to enforce any collection thereof, and shall also provide for payment thereof, together with all penalties, interest, costs

- 14 -

and expenses, by a deposit of a sufficient sum of money or by a good and sufficient undertaking as may be required or permitted by law to accomplish such a stay, unless Lessee shall furnish Lessor with a bond of a surety company qualified to do business within the State of California, reasonably satisfactory to Lessor which in form, content and amount of penalty, shall likewise be reasonably satisfactory to Lessor. In the event of any such contest, objection or opposition, Lessee promises and agrees, within five (5) working days after the final determination thereof adversely to Lessee, to fully pay and discharge the amounts involved in or affected by such contest, objection or opposition, together with any penalties, fines, interest, costs and expenses that may have accrued thereon or that may result from any such action by Lessee.

9. STORE OPENING.

9.01. The term "Date of Occupancy" as used in this Lease shall be the first to occur of the following two dates: (a) the date upon which Lessee opens the Toy Store for business; or (b) the date which shall be forty-five (45) days after: (i) the Store and Facilities shall be completed (except for minor items which do not interfere with the use or operation of the Toy Store and which Lessor agrees to complete as expeditiously as possible) in accordance with the Plans and Specifications and this Lease and possession thereof tendered to Lessee; (ii) the "Architect" supervising the work shall certify to Lessee that the Toy Store has been completed in accordance with the Plans and this Lease; (iii) the Facilities have been completed in accordance with

- 15 -

Exhibit "A" and shall comply with the requirements of Articles
7 and 14 hereof; and (iv) a permanent or temporary Certificate
of Occupancy or an equivalent use permit, in the event a Certi-
ficate of Occupancy is not issued by the local authorities, and
all other requisite permits, if any, permitting use and occupancy
of the premises for the purposes set forth in this Lease, includ-
ing if available an inspection certificate of approval by the
National Board of Fire Underwriters or equivalent rating authority,
if any, shall have been issued by the appropriate agency issuing
same and Lessor shall have delivered to Lessee certified or photo-
static copies of same.  Notwithstanding the foregoing in the event
the Date of Occupancy shall occur after October 31st, 1972, Lessee
shall not be required to open said store until May 31, 1973.  How-
ever, if Lessee nevertheless elects to open prior to May 31, 1973,
the Date of Occupancy shall be deemed to have occurred and the
Lease term shall commence as herein provided, except that Lessee
shall only be obligated to pay as and for the rent required pursua:
to this Lease an amount equal to one and one-quarter (1-¼%) per
cent of gross sales, as herein defined, but no less than an amount
required to service the Lessor's/first mortgage loan on the
institutional
Demised Premises and Facilities and taxes pursuant to Article 8
said rental to continue through May 31, 1973.  Thereafter, the
full rental provided in Article 3 shall be due and payable.

-16-

business prior to the completion of the matters set forth in subclause (i), (ii), (iii) and (iv) of this Article 9.01 and in the event of the exercise of such option, Lessor shall complete the Toy Store and the Facilities according to the Plans within thirty (30) days after such opening. Lessee shall at any time thereafter be privileged, but not obligated to complete, correct or remedy all, or in part, any such deficiency, provided that Lessee shall first give Lessor notice of its intention to do so and shall give Lessor thirty (30) days from the date of such notice within which to commence such work, in which event, Lessor shall diligently prosecute and complete such work. The cost of completing, correcting and remedying such deficiencies, unless paid by Lessor within thirty (30) days after written demand therefor, may, after written notice to any mortgagee, be deducted by Lessee from the rentals due under this Lease, without waiver of Lessee's other remedies hereunder.

9.02  "Lease Year" shall mean the twelve (12) month period commencing on the first day of February and terminating on the following January 31st.

9.03  In the event Toy Store is completed and is ready for occupancy prior to September 15, 1972, and Lessee elects not to open Toy Store prior to September 15, 1972, Lessee agrees to put in effect the insurance coverage called for in Article 15 hereof, and pay to Lessor the amount required to service the Lessor's/institutional first mortgage loan on the premises, and taxes pursuant to ARticle 8 hereof, all as of the date that a Certificate of Occupancy is issued by the City.

10. <u>OUTDOOR SELLING</u>.  Lessor hereby grants to Lessee the right to conduct outdoor sales of merchandise in the area cross-hatched in red upon Exhibit "A" hereto attached, marked "Display Area", and Lessee may also use a portion of the sidewalk along the front of Lessee's Toy Store (not City sidewalk) for outdoor selling of seasonable merchandise, provided such use of Display Area or sidewalk does not violate local laws or ordinances or the specific encumbrances and restrictions now of record annexed hereto as Schedule "T".  Lessee agrees while using such areas to keep them in a clean and sanitary condition, repair any damage to the blacktop surface or the sidewalk resulting from such use and keep the parking lot and sidewalk free and clear of rubbish and litter which might result from such use, but none of the foregoing shall relieve Lessor's obligations under this Lease.

Except as otherwise provided in this Article 10, neither Lessee, Lessee's employees or agents, nor Lessor, its employees, agents and tenants, shall solicit business in the parking areas, nor shall said parties distribute any handbills or other advertising matter in automobiles parked in the parking area or in other common areas.

11. <u>OPTION TO EXTEND LEASE</u>.  11.01.  Provided the Lessee shall not be in default at the time for exercising its options of any of the provisions of this Lease,

Lessee shall have the option to extend the term of this Lease for an additional period of ten (10) years upon the same terms and conditions as contained in this Lease, which option shall be exercised by written notice to Lessor not less than six (6) months prior to the expiration of the initial term hereof.

-18-

at the time for exercising its options of any of the provisions
of this Lease.                                               Lessee
shall have the option to extend the term of this Lease for an
additional period of ten (10) years upon the same terms and con-
ditions as contained in this Lease, which option shall be exercised
by written notice to Lessor not less than six (6) months prior to
the expiration of the initial term hereof.

11.03.  Notwithstanding the foregoing provisions of
this Article 11 the annual minimum rental during any renewal or
extension periods shall be deemed to be reduced from $102,000 to
$85,000 per annum.

12.  REPAIRS.

12.01.  During the first twelve (12) months after
the Toy Store opens for business and thereafter, Lessor shall,
at its own cost and expense, after written notice from Lessee
make all repairs of every kind and nature to the demised premises
and facilit
resulting from any defect or materials or workmanship.  There-
after, Lessee shall make all of said repairs and replacements re-
quired to keep the Premises in good condition and repair except
structural repairs required by governmental laws or regulations
and not due to Lessee's use of the demised premises.

12.02.  Lessor shall assign to Lessee all warrantic
guaranties                received by it in connection with the
construction of the improvements on the Demised Premises/ and Faci
in the
event any warranties or guaranties received by Lessor are not
assignable, Lessor agrees to use its best efforts to enforce such
rights as it may have in that connection on behalf of Lessee.

12.03.  In the event any repairs required to be
made by Lessor or Lessee pursuant to this Article 12 are occasion



by the misuse, fault, neglect, wrongful acts or omissions of the other party, its servants, employees, agents, customers or invitees, such repairs shall be made by the party at fault.

12.04. If either party shall fail to make (or shall commence to make, but shall fail diligently to prosecute subject to extensions of time for the type of delays set forth in Paragraph 4 hereof) such repairs, changes or replacements, as the case may be, which it is required to make in accordance with the provisions of this Article 12, after twenty (20) days written notice of the necessity therefor (or of such failure), the other party may perform all of the same at the expense of the defaulting party. In the case of default by Lessee, said expense shall be paid as additional rent with the next succeeding installment of rent; in the event of default by Lessor, said expense may, after written notice to any mortgagee, be deducted from the next succeeding installment(s) of rent becoming due hereunder. Emergency repairs, if Lessor's responsibility hereunder, may be made by Lessee without notice to Lessor and the cost of such repairs, may, after notice to any mortgagee, be deducted from the next succeeding installment(s) of rent becoming due hereunder.

12.05. During the Lease term and any extension(s) thereof, except as otherwise provided in this Lease, Lessee shall at its own cost and expense, make all necessary repairs to the Demised Premises and keep said premises in good condition and repair, and in clean and neat order during the entire term of this Lease, whether such repairs are interior or exterior, structural or non-structural, ordinary or extraordinary, foreseen or unforeseen hereby expressly waiving all rights to make repairs at the

-20-

expense of Lessor as provided for in Section 1941 and 1942 of the Civil Code of the State of California, or any subsequent amendment thereof, or other statute or law which may be hereafter passed by the State of California during the term of this Lease.

13. UTILITIES. Lessee shall promptly pay for all the utilities and public services rendered or furnished to the Demised Premises from and after the Date of Occupancy, including but not limited to steam, heat, water, gas, electricity, light and power, provided separate meters shall be installed for Lessee by Lessor at Lessor's cost and expense. Lessor shall pay for all such utilities and services furnished to the Demised Premises prio. to the Date of Occupancy. Sewer use charges levied for and during the lease term shall be paid by Lessee.

14. LESSOR'S COVENANTS, REPRESENTATIONS AND WARRANTIES.

14.01. Lessor covenants, represents and warrants that within the confines of the Shopping Center (a) no premises other than the Toy Store shall be leased, rented, used or occupied for the operation or conduct of a retail or discount toy, juveniles furniture, sporting goods store (b) no other store building or other facility

shall be rented, used or occupied for a retail store whose principal business is the sale of toys, juvenile furniture or sporting goods, (c) all other stores, buildings or other facilities shall be used only for retail and/or wholesale sales (other than warehouse sales), office purposes and consumer services; (d) the total gross GROUND floor area to be
Exhibit A or
erected in the entire Shopping Center on/Exhibit AA shall not exceed 45,000 square feet of building floor space in addition to the Demised Premises,. . . . . . . . . . . . . . . .

-21-

excluding mezzanines and shall not contain a building in excess of Four stories, nor shall any building in the Shopping Center be in any other location than as delineated on Exhibit A or contain square footage substantially in excess of that shown on Exhibit A; and the buildings delineated as the "Bank Building or Firestone Building on Exhibit A or AA shall not be higher than one story in height, exclusive of mezzanine, (e) and within a radius of three (3) miles of the Demised Premises as to property now or in the future owned or controlled, directly or indirectly, by Lessor or its principal owners or stockholders or directors or officers or their assignees, no premises other than Lessee's store unit shall be rented, used or occupied for the operation of a business similar to that conducted in the Toy Store. However, if any of the foregoing provisions shall be determined to be invalid by the highest appellate court of the United States or the State of California, then the same shall be deemed to be invalid.

14.02. Lessor covenants, represents and warrants that for as long as this Lease shall be in effect, Lessee shall have the use of non-exclusive reciprocal cross easements for ingress and egress of pedestrians and vehicles and for parking within the Shopping Center. Lessor covenants, represents and warrants that notwithstanding any provision in this Lease to the contrary the building shown as "Bank" on Exhibit "AA" and the building shown as "Restaurant" on Exhibit "AA" shall not contain in excess of one (1) story excluding the mezzanine.

14.03. Lessor hereby grants to Lessee an easement for access and parking purposes over, across and upon all of the parking areas of the Shopping Center. The easements granted hereby with respect to access and parking shall be non-exclusive and for the use in common by the parties hereto and successors and assigns and their lessees, licensees, concessional customers, employees and business invitees.

In no event shall Lessor construct in the Shopping Center any office building containing more than four stories, or any movie theatre, auditorium, arena or banquet facilities, without first having obtained Lessee's consent. For the purposes of this Article, a restaurant which includes the usual type of restaurant banquet room shall not be deemed a banquet facility.

Nothing contained in this Article shall be deemed to be a gift or dedication of any portion of the Shopping Center to the general public or for any public use or purpose whatsoever, it being the intention of the parties hereto that this Agreement be for the exclusive benefit of the parties hereto and their successors and assigns, and that nothing herein, express or implied, shall confer upon any person, other than the parties hereto and their heirs, administrators, legal representatives, successors and assigns, any rights or remedies under or by reason of this Agreement.

-23-

14.04.  The covenants of this lease shall run with the land commencing with the date ~~of execution of this lease~~ *ON WHICH LESSOR ACQUIRES TITLE TO THE LAND* and shall continue during the term of the Lease and any renewals thereof.  In the event of any breach or default under this paragraph, and the failure of Lessor to cure the same after sixty (60) days written notice thereof, in addition to any other reme- dies which Lessee may have at law or equity, until such time that such breach or default is cured, Lessee shall not be required to pay the minimum rent or other charges and payments provided herein, and during such period, Lessee shall only pay, as rent, one and one-quarter (1-¼%) per cent of Lessee's Gross Sales or that amount required of Lessor to service the institutional first/mortgage debt on the Demised Premises and Facilities plus taxes to be paid pursuant to ARticle 8 hereof.  Further, in addition to the foregoing, Lessor does herewith authorize Lessee to bring such proceedings in Lessor's name against other persons in violation hereof.  Lessor does herewith agree to execute and deliver any documents which may be required by Lessee in connection with the foregoing.

14.05.  In the event that normal access to the Demised Premises or the Common Facilities is blocked so as to substantially interefere with Lessee's business for a period in excess of fifteen (15) days, then until such normal access to the Demised Premises or the Common Area is restored, the rental pro- vided for in this Lease shall be adjusted and Lessee shall pay

one and one-quarter (1-1/4%) per cent of Lessee's gross sales
but not less than an amount required to service that portion of
Lessor's/first mortgage loan attributable to the Demised Premises
and facilities
/plus taxes and taxes to be paid pursuant to Article 8 hereof.

institutional

15. INSURANCE.

15:01.  (a)  During the entire term of this Lease,
Lessee at its own cost and expense shall:

(i)  Keep said building and improvements on or
appurtenant to the Demised Premises, including all alter-
ations, rebuildings, replacements, changes, additions and
improvements, insured in the name of and for the benefit of
Lessor, Lessee and the Owner of any fee and the holder of any
institutional first fee mortgage, as their respective interests
may appear, against loss or damage by fire, and all hazards
covered by the          standard form of extended coverage
endorsement in the State of California.  Such insurance shall
be in an amount equal to full insurable value of the improve-
ments.  All policies with respect to the Toy Store shall bear
endorsements to the effect that Lessor shall be notified not
less than ten (10) days in advance of modification or can-
cellation thereof and that the assured has waived right of
recovery from Lessee.  Copies of such insurance policies or
certificates shall be delivered to Lessor.  Irrespective of
the cause thereof, Lessor shall not be liable for any loss
or damage to the Toy Store, resulting from fire, explosion
or other insured casualty/  The term "full insurable value"
shall mean actual replacement value (exclusive of cost of

or occurrence.



-25-



excavation, foundation and footings). Such "full insurable
value" shall be determined from time to time (but not more
frequently than once every five (5) years, at the request
of Lessor by the fire insurance company carrying the highest
amount of fire insurance on the Demised Premises or its
agent, if the same is required by the first in-
stitutional lender.

(ii) Provide and keep in force for the benefit of
Lessor and Lessee comprehensive general public liability
insurance policies, with a company or companies authorized
to do business in the State of California, protecting Lessor
and Lessee against any and all liability, in the amount of
not less than $1,000,000 in respect to any one occurence, and
in the amount of not less than $500,000 in respect of injuries
to or death of any one person, and in the amount of not less
than $100,000 in respect to destruction or damage to property,
and such policies shall cover the entire Demised Premises and
appurtenances thereto except the balance of the Shopping
Center. A certificate of the insurer evidencing the in-
surance carried with proof of payment of premiums and an endorse-
ment which prohibits cancellation, termination or modifications
of any such insurance without ten (10) days prior written
notice to Lessee and deposited within ten (10) days prior to
the expiration of any such policy or renewal thereof shall be
furnished Lessor.

-26-

(iii)  Anything in this Lease to the contrary notwith-
standing, it is understood and agreed that effective when
development of Phase I or any adjacent property is commenced,
the Lessor will keep in force a policy or policies of liabili
insurance placed with a company or companies authorized to
do business in the State of California protecting the Lessor
and naming the Lessee and the Guarantor with respect to the fa
lities of Phase I and Phase II
             in the amount of not less than One Million ($1,000,0
Dollars in respect to any one occurrence, Five Hundred Thousa
($500,000) Dollars in respect of injuries to or death of any
one person and One Hundred Thousand ($100,000) Dollars in
respect of destruction or damage to property.  A renewal polic
shall be procured not less than ten (10) days prior to the
expiration of any such policy.  A certificate of the insurer
evidencing the insurance carried with proof of payment of
premiums and an endorsement which prohibits cancellation,
termination or modifications of any such insurance without
ten (10) days prior written notice to Lessee and deposited
within ten (10) days prior to the expiration of any such
policy or renewal thereof.

(iv)  In the event that any time during the lease term o
any renewal term thereof the permanent improvements then con-
stituting the Toy Store shall be damaged or destroyed partial
or totally by fire, the elements or other casualty or occurre

Lessee shall, at its own expense promptly and with due dilig
repair, rebuild and restore the same as nearly as practicabl

-27-

to the condition existing just prior to such damage or destruction.. Any insurance proceeds in excess of the building costs shall be and remain the property of Lessee. If such damage or destruction to the Demised Premises shall occur during the last two (2) years of the term of the Lease or any renewal term, Lessee may, upon thirty (30) days notice in writing to Lessor, terminate this Lease.  In the event that this Lease shall be terminated as above provided, all unearned rent or other charges paid in advance shall be refunded to Lessee, (and all insurance proceeds or the building excluding merchandise    fixtures* shall be the property of th Lessor).

(v)  In the event that at any time during the Lease term or any renewal thereof, except the last two (2) years thereof, any other building or buildings of Phase II or of the Shopping Center or development shall be damaged or destroyed partially or totally by fire, the elements or any other casualty or occurrence, Lessor shall, at its or its tenant's expense, promptly and with due diligence, either repair, rebuild and restore the same as nearly as practicable to the condition existing just prior to such damage or destruction, or demolish such other building or buildings, clean up all rubbish and debris and level said area so that the same shall be in good, safe and presentable condition for use as a parking area.


(b)  All insurance provided by Lessee, and Lessor as required by this Article 15, shall be carried in responsible companies licensed to do business in the State of California.  Insu ance against damage to the Demised Premises by fire, and other

*,and Lessee's equipment

-28-

casualty, shall also include the interest of the holder of any
institutional first            mortgage on the fee, in each case,
subject to the limitations hereafter set forth in this subpara-
graph (b), under a standard mortgagee endorsement.  Such insurance
against fire, and other casualty, shall provide that loss, if
any, shall be adjusted with the insurance companies by Lessee in
accordance with the provisions of this Article 15.

      (c)  Lessee shall pay all premiums and charges for
all of such policies, which it is required to provide pursuant to
subparagraphs (a)(i) and (ii) of this Article, and if Lessee shall
fail to make any such payment when due or carry any such policy,
Lessor after ten (10) days written notice to Lessee, at its option
may, but shall not be obligated to, make such payment or carry
such policy, and the amounts paid by Lessor, with interest thereon
at the legal rate from the date of payment, shall become due and
payable by Lessee, as additional rent, with the next succeeding
installment of net rent which shall become due after such payment
by Lessor; but payment by Lessor of any such premiums or the
carrying by Lessor of any such policy shall not be, nor be deemed
to be, a waiver or release of the default of Lessee with respect
thereto, or the right of Lessor to institute summary proceedings
and/or to take such other action as may be permissible hereunder
as in the case of default in the payment of net rent.

      Lessor shall pay all premiums and charges for all of
such policies, which it is required to provide pursuant to sub-
paragraph (a)(iii) of this Article, and if Lessor shall fail to
make any such payment when due or carry any such policy, Lessee,
at its option, may, after ten (10) days written notice to Lessor,

-29-

but shall not be obligated to, make such payment or carry such policy, and the amounts paid by Lessee, with interest thereon at the legal rate from the date of payment, shall be deducted from the next succeeding installment of rent which shall become due after such payment by Lessee; but payment by Lessee of any such premiums or the carrying by Lessee of any such policy shall not, nor be deemed to be, a waiver or release of the default of Lessor with respect thereto, or the right of Lessee to institute summary proceedings and/or to take such other action as may be permissible hereunder.

(d)  At the commencement of the term of this Lease Lessee and Lessor shall deliver to each other certificates of the insurance each is required to maintain and at least ten (10) days prior to the expiration of each such policy, each shall pay the premiums for renewal insurance and within such period shall deliver to the other the original policy or duplicate original with an endorsement thereon marked paid and/or duplicate receipt or other information evidencing payment thereof.

(e)  Neither Lessee nor Lessor shall violate or permit to be violated any of the conditions or provisions of any such policy, and each shall so perform and satisfy the requirements of the companies writing such policies that at all times companies of good standing shall be willing to write and/or continue the insurance required hereby.

(f)  Lessee shall have the right to maintain the required insurance under blanket policies.

-30-

(g) Lessee and Lessor shall cooperate in connection with the collection of any insurance moneys that may be due in the event of loss, and Lessee and Lessor shall execute and deliver such proofs of loss and other instruments which may be required for the purpose of obtaining the recovery of any such insurance moneys.

(h) Each such policy or certificate therefor issued by the insurer shall, to the extent obtainable, contain an agreement by the insurer that such policy shall not be cancelled without at least fifteen (15) days prior written notice to Lessor or Lessee, as the case may be, and as applicable, the holder of any first permanent institutional mortgage on the fee, and in no event shall the insured party without the prior written consent of the other cancel or change such policies as they are required to maintain so as adversely to affect the coverage thereunder.

15.02 Lessee agrees to hold and save Lessor harmless from any and all loss or damage which may be occasioned to any goods, ware or merchandise, effects or property of any and all kinds of character, whether belonging to Lessee or any other person or persons whomsoever, in or upon or about the Demised Premises, or any portion thereof, or its appurtenances, which shall include sidewalks fronting the Demised Premises, howsoever occasioned unless caused by Lessor, its agents, employees or representatives. Should suit be instituted against Lessor by any person to enforce any claim of the character in this paragraph specified, Lessee agrees to defend the same at its own cost and expense, for and on behalf of Lessor, and to discharge any final judgment rendered therein against Lessor.

-31-

16.   SIGNS.

16.01.   Lessee shall have the right to install, maintain and replace in, on, or over the store, such advertising matter and signs as Lessee may desire, provided erection of such signs by Lessee shall be approved by the City of San Jose and provided such signs shall comply with any applicable requirements of governmental authorities having jurisdiction thereof and Lessee shall obtain any necessary permits.

Lessee shall make all repairs required by reason of the installation and maintenance of its signs, except damage caused by the negligence of the Lessor, its agents, servants or employees.

16.02.   Lessee shall have the right at its own cost and expense to install and maintain one (1) pylon sign at a point to be determined by Lessee and approved by Lessor, provided, however, the erection of such sign by Lessee, shall be approved by the City of San Jose and shall comply with any applicable requirements of governmental authorities having jurisdiction thereof, and Lessee shall obtain any necessary permits therefor.  Lessee shall at its own cost and expense maintain, repair and operate said sign. Lessor agrees to cooperate in all efforts to obtain such City's approval.

-32-

17.   MECHANICS' AND OTHER LIENS.  Except as to matters relating to Lessor's obligation under this Lease, Lessee agrees to keep the demised premises, and every part thereof, and any and ever estate, right, title and interest therein, at all times during the term of this Lease free and clear of mechanic's liens and other liens for labor, service, supplies, equipment or material, furnish to the Demised Premises, and that it will at all times fully and promptly pay and discharge and wholly protect and save harmless the Lessor, and all and every part of the estate, right, title and interest of Lessor in and to all and every part of said Demised Premises, against any and all demands or claims which may or could ripen into such liens or claims therefor, provided, however, that Lessee shall have the right to contest any such lien or claim upon giving to Lessor promptly notice of such contest and furnishing to Lessor security therefor in form and amount satisfactory to Lessor. Lessee agrees to give Lessor not less than ten (10) days notice in writing in advance of the commencement of any construction, alteration, addition or repair of the Demised Premises in order that Lessor may post an appropriate notice of Lessor's non-responsibility therefor.

18.   ADDITIONAL RENT.

A.   (1)  If in any lease year Lessee's gross sales shall exceed the sum of FOUR MILLION TWO HUNDRED FIFTY THOUSAND ($4,250,000) DOLLARS, Lessee agrees to pay Lessor, as additional rent, a sum equivalent to one and one-fourth (1-1/4%) percent of such excess.

(2)  Such percentage rental shall be paid within ninety (90) days after the end of each lease year.  Said payment shall be accompanied by a statement certified by a fiscal officer o

Lessee setting forth said gross sales.  Each lease year shall
constitute a separate accounting period and the computation of
percentage rental due for any one lease year shall be based on the
gross sales for such lease year, without reference to or adjustment
for the gross sales for any other lease year.

(3)  "Gross Sales" defined:  The term "gross
sales", as herein used, shall mean the gross or aggregate amount
of all sales, services and deliveries in and from the Demised
Premises, including sales made by sublessees, licensees or con-
cessionaires of the Lessee, after deducting therefrom the followin

(i)  The amount of refunds, credits and allowances to
customers for merchandise returned or exchanged.

(ii)  Sales at or slightly above cost to non-profit, religious
and charitable organizations and to Lessee's employees.

(iii)  Unpaid balances on credit sales written off as bad debts.

(iv)  Federal, State and local taxes actually collected from
customers as taxes, and any occupational sales taxes
or other taxes levied upon or measured by Lessee's gross
receipts, excluding therefrom, however, all local,
State or Federal franchise or income taxes, even though
such franchise or income taxes may be measured in whole
or in part by Lessee's gross receipts.

(v)  Special charges to customers for delivery of merchandise.

(vi)  Transfers of merchandise to other stores of Lessee or
of affiliated units of Lessee.

(vii)  Service and interest charges for time payment accounts
and charge accounts.

-34-

(viii)   Net sums received by Lessee from sales from vending
machines for candy, cigarettes, soft drinks and the
like and receipts from amusement machines and income
from telephone booths.

(ix)   Non-retail sales, bulk sales and other non-recurring
transactions not in the ordinary course of business,
provided this paragraph shall not exclude the regular
transactions of a wholesale business.

The fact that a part of Lessee's gross sales may be
payable as rent hereunder shall not, nor shall any other provision
of this Lease be construed to create a co-partnership or joint
venture by or between Lessor and Lessee, or make either party in
any way responsible for the debts and/or losses of the other, and
Lessee shall be free to determine and follow its own business and
sales policies and practices in the conduct of its business on the
Demised Premises.

B.  Records:  Lessee hereby agrees to keep at the
Premises or at the executive offices of Guarantor where now or
hereafter located, a true and accurate account of all receipts
from the Demised Premises.

Any claim by the Lessor for revision of any state-
ment of sales or for additional rent, which claim is not made to
the Lessee within one (1) year after the date when such statement
of sales is mailed or delivered to the Lessor shall be deemed
and hereby is waived by the Lessor.  The Lessor agrees to hold
in confidence all sales figures and other information obtained

-35-

from Lessee's records. The Lessee makes no representation or
warranty as to the sales which it expects to make in the Demised
Premises.

Notwithstanding anything to the contrary herein,
Lessor may, once in any leasehold year, cause an audit of the
sales of Lessee in the Demised Premises, to be made by Lessor
or by a public accountant of Lessor's own selection; and if the
statement of "Gross Sales" previously made by Lessee to Lessor
shall be found to be more than two per cent (2%) less than the
amount of Lessee's Gross Sales (as defined in this paragraph),
shown by such audit, Lessee shall immediately pay the cost of
such audit, not exceeding the sum of $500.00, as well as the
additional rental therein shown to be payable by Lessee to Lessor;
otherwise, the cost of such audit shall be paid by Lessor.

### 19. COVENANT OF TITLE AND QUIET ENJOYMENT.

19.01. Lessor covenants, warrants and represents to
Lessee that on or before July 15, 1972 Lessor will be the owner of
the land described in Exhibits A-2, free and clear of any liens,
encumbrances or defects in title, or leases or tenancies or agree-
ments affecting the rights granted to Lessee under this Lease,
except those specifically set forth in Schedule "T" annexed hereto
and forming part hereof; and except for an "institutional" first
land, construction mortgage and/or permanent mortgage which Lessor
may permit to be a lien against the Demised Premises, Phase I and/or
Phase II or any portions thereof, prior to the Lessee's leasehold
interest and rights under this lease provided that all of the terms,
conditions and provisions of Article 31 shall be applicable to said
mortgage (as though the institutional mortgage had requested the
subordination of the lease or if said lien is prior thereto as a
matter of law then the terms, conditions and provisions of Article
31 shall be applicable so as to protect Lessee's interest and
rights under this lease, as provided in Article 31). The parties
acknowledge that Lessor will enter or has entered into leases with
other tenants on portions of the "Shopping Center". Such leases
will provide for mutual non-exclusive cross-easements for ingress
and egress and for parking.

Lessor further covenants, warrants and represents
to Lessee that the building to be constructed for the Lessee on

-36-

the Demised Premises may be lawfully used as of the Date of
Occupancy for a Toy Store selling merchandise as set forth in
Article 23 hereof, and that there are no restrictive covenants,
zoning or other ordinances or regulations which as of such Date
of Occupancy will prevent Lessee from conducting such operations
in the Toy Store; and Lessor covenants, warrants and represents
to Lessee that possession of the Demised Premises will be de-
livered to Lessee free and clear of all liens, encumbrances,
and violations of law, ordinances and regulations relating to
the use, occupancy and construction of the Demised Premises,
subject to the foregoing provisions of this Par.19.01.
except as may be specified on said Schedule "T", Lessor cov-
enants, warrants and represents that it has on the execution of
this Leasethe full right and power to execute and perform this
Lease and grant the estate demised herein.  In the event of the breac
of any of the covenants, provisions or warranties set forth in this
Article 19 which shall substantially or materially interfere with
the quiet enjoyment of Lessee, in addition to any other rights
or remedies which Lessee may have, Lessee shall have the right,
after notice to Lessor and Lessor's mortgagee, if requested by
Lessor, and if Lessor and/or Mortgagee shall have failed to correct
such breach within ninety (90) days after Lessor has received
such notice, Lessee shall have the option either to correct any
such breach or failure or to cancel this Lease by written notice
thereof to Lessor, whereupon Lessee shall be relieved of all
liability hereunder.

19.02.  Lessor covenants and agrees with Lessee
that the Lessee, upon paying the rent herein reserved and performing

-37-

the covenants and agreements hereof, shall peaceably and quietly
have, hold and enjoy the Demised Premises and all rights, ease-
ments, appurtenances and privileges belonging or in any wise
appertaining thereto during the lease term without molestation
or hindrance of any person whomsoever and if at any time during
the term hereby demised, the title of Lessor shall fail to grant
the terms hereby demised, Lessee at its option may annul and void
this Lease, subject to the provisions of this Paragraph 19, where-
upon Lessee shall be relieved of all liability hereunder; provided,
however, Lessee shall not annul and void this Lease so long as
Lessee's use and occupancy of the Demised Premises shall not be
disturbed, and Lessor shall diligently attempt to cure such defect;
provided further that concurrently therewith or subsequent thereto,
Lessee shall have the option at Lessee's expense to cure such
defect and to deduct the cost thereof from the next installment(s)
of rent.

20. BANKRUPTCY. If a petition in bankruptcy under
the Federal Bankruptcy Act shall be filed by or against the named
Lessee, Lessee or Interstate Stores, Inc. ("Guarantor"), or if
Lessee or Guarantor shall be adjudicated bankrupt, or if Lessee
or Guarantor shall make a general assignment for the benefit of
creditors, or if in any proceeding based upon the insolvency of
Lessee or Guarantor, a Receiver of all the property of Lessee or
Guarantor shall be appointed and shall not be discharged within
ninety (90) days after such appointment, then Lessor may terminate
this Lease by giving notice to Lessee of its intention so to do;
provided, however, neither bankruptcy, insolvency, an assignment

-38-

for t   benefit of creditors, nor the a    intment of a Receiver shall affect this Lease or permit its termination so long as all of the covenants on the part of Lessee to be performed shall be performed by Lessee or someone claiming under it.

21.01   DEFAULT.  Lessee agrees that should it fail to pay any part of the rental herein reserved or any other sum required by it to be paid to Lessor for a period of ten (10) days after written notice thereby by Lessor to Lessee, or if default should be made in any of the other covenants or conditions on Lessee's part herein contained and such shall continue for a period of thirty (30) days after written notice by Lessor to Lessee thereof, or if said default cannot be cured within thirty (30) days, then if Lessee does not commence within thirty (30) day period to cure said default and cure the same with all reason-able dispatch, such default or breach shall, at the option of Lessor, work a termination of this Lease to the same extent and with all the legal incidents as if the term hereof had expired by efflux of time, and it shall then be lawful for lessor, their agents or representatives, to re-enter the Demised Premises and remove all persons therefrom and repossess themselves of the Demised Premises as of its original estate, or Lessor may let and relet said premises in whole or in part, altering, chaning or subdividing the same, as in its unqualified judgment may accom-plish the best result (with or without terminating this Lease) at such rental and upon such terms and for such length of time, whether Lesser or greater than the unexpired portion of the term of this Lease, as Lessor may see fit, and Lessee shall be liable unto Lessor for any deficiency between the rentals so procured by Lessor for the period of said letting or reletting, and the rental herein reserved for a period or periods identical with the

term of said letting or relettings, and Lessor may institute
action for the whole of such deficiency then existing, and
Lessee agrees to pay said deficiency unto Lessor from time to
time when called upon by Lessor so to do, and should this Lease
not be terminated, Lessor may, notwithstanding such letting or
reletting, at any time thereafter elect to terminate it; or
Lessor shall, at its option, be entitled to recover from Lessee
the worth at the time of any such termination of the excess, if
any, of the amount of rent and charges equivalent to rent reserved
in this Lease for the balance of the term hereof over the then
reasonable value of the premises for said period.  The rights
and remedies given to Lessor in this Lease are distinct, separate
and cumulative and no one of them, whether or not exercised by
Lessor, shall be deemed to be an exclusion of any of the others
herein or by law or in equity provided.

21.02.  PROTECTION OF MORTGAGE.  During the con-
tinuance in effect of any institutional first mortgage and/or deed of trust affecting
the/Demised premises, Lessee will not terminate this Lease fee of the and/or the facilities
because of any default on the part of Lessor to observe or perform
any of the covenants or conditions herein contained if the mort-
gagee or the holder of any deed of trust or its assigns (collec-
tively, the "Mortgagee") within sixty (60) days after Lessee
has mailed to Mortgagee, at the last known address thereof, a
written notice of intention to terminate this Lease for such
cause, shall cure such default, if same can be cured by the
payment of money, or if such default be for another

-40-

cause, shall undertake in writing to perform and shall within a reasonable time thereafter perform all the covenants of this Lease to be performed by the Lessor.

22. EMINENT DOMAIN.

22.01. In the event all of the Toy Store shall be taken (within the meaning hereof, "taken" includes a purchase in lieu thereof) by public or quasi-public authority, this Lease shall terminate as of the date Lessee shall be deprived of the physical possession thereof or on the date as of which such public or quasi-public authority shall make demand for attornment by Lessee, whichever shall first occur.

22.02. In the event that less than the whole, but more than fifteen (15%) per cent of the aggregate ground floor area of the Toy Store shall be so taken, Lessee shall have the option to terminate this Lease as of the date Lessee shall be dispossessed from the part so taken as aforesaid, by giving notice to Lessor of such election so to terminate within ninety (90) days from the date of such dispossession, or from the date that Lessee shall be notified by either Lessor or the condemning authority of such taking, whichever shall first occur. Notwithstanding any termination by Lessee as in this section 22.02 provided, Lessee may, after such termination by it, continue to occupy the Demised Premises, pursuant to all of the terms, covenants and conditions in this Lease set forth, until such time as Lessee shall be dispossessed or required to remove by the condemning authority or any other authority having jurisdiction thereof subject, however, to

-41-

the full performance by the Lessee of all the terms, covenants
and conditions in this Lease set forth.

22.03.   In the event of a taking of less than
fifteen (15%) per cent of the Toy Store, or in the event of a
taking of more than fifteen (15% per cent and Lessee shall not
elect to terminate as hereinabove provided, this Lease shall con-
tinue as to that portion of the Toy Store which shall not have
been taken, in which event Lessor shall, at its sole cost and
expense, promptly and with due diligence, restore the Toy Store
as nearly as practicable to a complete unit of like quality and
character as existed just prior to such appropriation.  During
demolition or restoration, rent and all other charges shall abate.
If Lessee continues to conduct business, however, the rent and
any other charges payable hereunder shall abate in the proportion
that the part of the Toy Store unit which shall be untenantable
bears to the whole.  Upon physical possession of a portion of
the Store unit being taken by the condemning authority, the annual
minimum rental shall be reduced in the proportion that the ground
floor area of the part of the Toy Store so taken shall bear to
the ground floor area of the Toy Store prior to such taking.

22.04.  Without limiting the foregoing, in the
event that more than twenty (20%) percent of the parking area of
the Shopping Center or of the Facilities within the Shopping Center
shall be taken by public or quasi-public authority, Lessee shall
have the option to terminate this Lease as of the date possession of
the land shall be taken by such authority, by giving notice to
Lessor of such election within ninety (90) days thereafter; provided,

-42-

however, said termination by Lessee shall be null and void, if
it is based solely on the taking of parking area and/or Common
Area or Facilities and if within ninety (90) days following
the date of possession of said areas or Facilities shall
be so taken, Lessor shall substitute additional parking upon
equivalent and improved lands contiguous to the Demised Premises
integrated with Phase II, provided Lessee shall be protected with
respect to such areas upon the same terms and conditions set forth
in this Lease.  Lessor shall immediately notify Lessee of any
notice of any such proposed taking.

22.05.  In the event this Lease shall be terminated
pursuant to this Article 22, any annual minimum rental paid in
advance of the date Lessee shall lose possession of the Demised
Premises shall be refunded to Lessee, and Lessee shall have an
additional sixty (60) days, rent-free, within which to remove its
property from the Demised Premises.  Lessee shall have the right
to make separate claims against the condemning authority for loss
of its leasehold and loss of or damage of its trade fixtures,
furnishings, furniture, personal property or leasehold improvements
Except as hereinabove provided, Lessee does hereby waive all damage
awarded and other compensation for any and all expropriation or
taking by public or quasi-public authority, whether for a whole or
a part of the Demised Premises and Lessee agrees that same shall
belong to and be the property of the Lessor without any partici-
pation by Lessee.

23.  USE.  Lessee may use _____
_____ and occupy the Demised Premises for the

-43-

sale at retail of toys, juvenile furniture, pools, outdoor play equipment, layettes, infants' furnishings and clothing, health and beauty aids, records, candy, sporting goods and any items related or similar to the foregoing and after the completion of the first two leasehold years, for any other lawful purpose, provided such other use does not violate any /then exclusive use granted prior to the time of such contemplated use to any other tenant of the Shopping Center.

23.02.   Lessee agrees not to use or permit any use to be made of the Demised Premises, or any acts to be done therein which will cause a cancellation of any Lessee's insurance policy covering said premises, or any part thereof, or sell or permit to be kept, used or sold in or about said premises any article which may be prohibited by the Standard Form of fire insurance policy.                    Lessee shall, at its sole cost and expense, comply with any and all requirements pertaining to said Demised Premises, of any insurance organization or company necessary for the maintenance of the fire and public liability insurance covering said premises.  Lessee shall not commit, or suffer to be committed, any waste upon the Demised Premises.

23.03.    Lessee shall not use or occupy, nor permit or suffer, the Demised Premises or any part thereof to be used or occupied for /any unlawful or illegal business, use or purpose, nor the sale of motor fuel or for any business, use or purpose deemed disreputable or extra hazardous, nor in such manner as to constitute a nuisance of any kind, nor for any purpose or in any way in violation of a certificate of occupancy or of any present or future governmental laws, ordinances, requirements, orders, directions, rules or regulations. Lessee shall immediately upon the discovery of any such unlawful,

-44-

illegal, disreputable or extra hazardous use take all necessary steps, legal and equitable, to compel the discontinuance of such use and to oust and remove any subtenants, occupants, or other persons guilty of such unlawful, illegal, disreputable or extra hazardous use.

24.  <u>ASSIGNMENT AND SUBLETTING</u>.  Lessee may assign this Lease or sublet or underlet, license or grant concessions for all or any part(s) of the Demised Premises, provided, however, that regardless of any such sublease(s) and/or assignment, Lessee and Guarantor shall remain fully liable for the performance of all the obligations of this Lease.  At its election Lessee may choose to vacate all or any part or parts of the Demised Premises, and not to operate any business thereon, provided, however, that if the premises are vacant for a period in excess of twelve (12) consecutive months, Lessor may elect to terminate this Lease at any time during such vacancy after said 12 months, by giving Lessee a thirty (30) day written notice of its intention to terminate this Lease; until the date of such termination, Lessee and Guarantor shall not be relieved of any liability hereunder but upon such termination shall be relieved of any liability under this Lease.

25.  <u>COMPLIANCE WITH LAWS</u>.  Lessee agrees to comply with all laws, ordinances, orders, rules and regulations, now or hereafter in force applicable to the Demised Premises        except that Lessee shall not be required to make changes or alterations of a structural nature unless caused by Lessee's use or any change of use.  Lessor agrees, at its own cost and expense, to comply with all other laws, ordinances, rules and regulations, now or

-45-

hereafter in force with respect to the Demised Premises and to make all structural changes or alterations required thereby which are not caused by Lessee's use or change or use of the Demised Premises.

26.  HOLDING OVER.   In the absence of any written agreement to the contrary, if Lessee should remain in occupancy of any of the Demised Premises after the expiration of the lease term, it shall so remain as a tenant from month to month and all provisions of this Lease applicable to such tenancy shall remain in full force and effect, and notwithstanding any law, ordinance or statute to the contrary, Lessee agrees that its occupancy may be terminated upon thirty (30) days prior written notice at any time after the expiration of the lease term.

27.  ALTERATIONS.

27.01.   Lessee shall have the right, at its expense, from time to time, to redecorate its store and to make such alterations, installations and changes therein as it shall deem desirable for its use; provided, however, that the afore-mentioned alterations, installations and changes shall not impair the safety of the Demised Premises and shall be done in a good and workmanlike manner and in accordance with all the applicable laws and other governmental requirements; and provided further, that any such alterations or changes shall not weaken the structure soundness or diminish the value of the Demised Premises.  Lessor shall execute and deliver upon request of Lessee, any instrument or



-46-

instruments which may be required by any public or quasi-public authority for the purpose of obtaining any license or permit for the making of such alterations, changes or installations in, to, or upon the Demised Premises, in default of which, Lessor hereby constitutes and appoints Lessee Lessor's attorney-in-fact to execute such instrument or instruments for and on behalf of Lessor. Lessee shall pay for such licenses or permits.  Lessee shall notify Lessor thirty (30) days prior to the commencement of such work in order for Lessor to be able to post Notice of Non-Responsibility.

27.02.  Lessee covenants to pay promptly when due the entire cost of any work to the Demised Premises performed pursuant to the provisions of this Article 27; so that the Demised Premises shall at all times be free of liens for labor and materials resulting therefrom; to procure all necessary permits before under-taking such work; to do all of such work in a good and workmanlike manner, employing materials of good quality and complying with all governmental requirements; and to save Lessor harmless from and indemnify Lessor against all injury, liens, loss, claims or damage to any person or property occasioned by or growing out of such work.

28.  ATTORNEYS' FEES.  In the event that the Lessor should institute any suit against Lessee for violation of any of the covenants or conditions of this Lease or for recovery of poss-ession of the Demised Premises, or should the Lessee institute suit against Lessor for violation of any of the covenants or conditions of this Lease, or should either party intervene in any action or proceeding in which the other is a party, to enforce or protect its

-47-

interest or rights hereunder, the prevailing party shall be en-
titled to the fees of its attorneys in the reasonable amount
thereof, to be determined, in the instance of a legal proceeding,
by the court and taxes as a part of the costs thereof.

29. ACCESS TO PREMISES.    Subject to requirements
of Lessee for store security purposes, Lessee shall permit
Lessor and the holder of any institutional first
mortgagee fee or its or their agents to enter the Demised
Premises at all reasonable hours for the purpose of inspec-
tion of both the Demised Premises and the equipment therein;
or making repairs that Lessee may neglect or refuse to make in
accordance with the agreements, terms, covenants and conditions
thereof, for the purpose of showing the Demised Premises to persons
wishing to purchase or make a mortgage loan upon the same; for
posting notices of non-responsibility in connection with alterations
and construction (which notices shall not be removed by Lessee
until after the expiration of the statutory lien period), and at
any time  within six (6) months prior to the expiration of the terms
to persons wishing to rent the whole or part of the Demised Premises.

30. SALE OR CONVEYANCE BY LESSOR.    In the event of a
sale or conveyance by Lessor of the Demised Premises, the same
shall be made subject to this Lease and shall operate to release
Lessor from any future liability on any of the covenants or con-
ditions, express or implied, herein contained in favor of Lessee,
and in such event Lessee subject to other provisions in this Lease
agrees to look solely to the responsibility of the Lessor and
successors in interest of the Lessor in and to this Lease

-48-



Nothing herein contained shall relieve Lessor from any liability
which has accrued under said Lease against it to and at the time
of said sale or conveyance.

31.  SUBORDINATION OF LEASE.

    31.01.  At the option of the institutional
first   mortgagee, Lessee agrees to subordinate this Lease to
a lien of any "institutional first mortgage", which term is here-
inafter in this Section 31.01 defined, which may hereafter affect
the Demised Premises/or any part thereof, and to all renewals,
modifications, consolidations, participations, replacements and
extensions thereof; provided that Lessee shall enjoy all of its
rights under this Lease regardless of any inconsistent provision in
such mortgage, and provided further, that simultaneously with the
execution of such institutional first mortgage, the holder thereof
shall enter into a written agreement, in recordable form,

    with Lessee to the effect that in the event of Lessor's
default the holder shall assume, in recordable form, all of the
obligations of Lessor herein and that as long as this Lease has not
been terminated as a result of Lessee's default, the rights of Lessee
under this Lease shall not be terminated, and the possession of
Lessee shall not be disturbed by the holder of any such mortgage or
by any proceedings on the debt which any such mortgage secures, or
by any person, firm or corporation whose rights were acquired as a
result of such proceedings or by virtue of a right or power contained
in any such mortgage or the bond or note secured thereby.  The term

"institutional first mortgage", as used herein, shall mean a first mortgage given to secure moneys advanced by a bank, savings and loan association, trust company, insurance company, pension or retirement fund, or teachers' or any other annuity fund, or similar institutions or funds subject to the same legal limitations with respect to mortgage loans on real property in the State of California that insurance companies, banks, pension funds or other such institutions which are authorized to do business in the State of California shall then be subject.

31.02.  If the Demised Premises or Facilities or any portion thereof or Phase I or Phase II or any portion thereof are now or hereafter subject to the lien of any building loan agreement, mortgage, deed of trust or similar instrument, Lessor covenants and agrees to obtain from such lienor and deliver to Lessee the aforesaid non-disturbance agreement in recordable form, and this Lease shall not become binding upon the Lessee until Lessor shall perform such covenant, otherwise Lessee has the right to cancel this Lease.

31.03.  The word "mortgage" as used herein shall include a deed of trust and a sale-leaseback transaction with an "institutional lender" of the type described in Section 31.01 hereof.

32.  LESSEE'S CERTIFICATE.  Lessee shall, without charge, at any time and from time to time, within ten (10) days after receipt by Lessee of written request thereto from Lessor, deliver a written instrument to Lessor, or any other person, firm or corporation specified by Lessor, duly executed and acknowledged, certifying:

(a)  That this Lease is unmodified and in full force and effect, or, if there has been any modification, that

-50-

the same is in full force and effect as modified and stating any
such modification;

      (b)  whether or not there are then existing any
set-offs or defenses against the enforcement of any of the agree-
ments, terms, covenants or conditions of this Lease and any
modifications thereof upon the part of Lessee to be performed or
complied with, and, if so, specifying the same; and

      (c)  the dates to which the rent and other charges
hereunder have been paid.

    33.  <u>LESSOR'S CERTIFICATE</u>.  Lessor shall, without
charge, at any time and from time to time, within ten (10) days
after receipt by Lessor of written request thereof from Lessee,
deliver to Lessee a written instrument, certifying whether Lessee
has or has not, as the case may be, faithfully and fully made all
payments then and theretofore due to Lessor and whether Lessor
knows or does not know, as the case may be, of any default by
Lessee in the performance by Lessee of all agreements, terms,
covenants and conditions on Lessee's part to be performed, and,
if it does know of any default, specifying the same.

    34.  <u>WAIVER</u>.  No covenant or condition of this Lease
can be waived except by the written consent of Lessor, and fore-
bearance or indulgence by Lessor in any regard whatsoever shall
not constitute a waiver of the covenant or condition to be per-
formed by Lessee to which the same may apply, and, until complete
performance by Lessee of said covenant or condition, Lessor shall
be entitled to invoke any remedy available unto it under this Lease
or by law, despite said forebearance or indulgence.

-51-

No covenant or condition of this Lease can be waived except by the written consent of Lessee, and forebearance or indulgence by Lessee in any regard whatsoever shall not constitute a waiver of the covenant or condition to be performed by Lessor to which the same may apply, and, until complete performance by Lessor of said covenant or condition, Lessee shall be entitled to invoke any remedy available unto it under this Lease or by law, despite said forebearance or indulgence.

The subsequent acceptance of rental hereunder by Lessor shall not be deemed to be a waiver of any preceding breach by Lessee of any term, covenant or condition of this Lease, other than the failure of Lessee to pay the particular rental so accepted, regardless of Lessor's knowledge of such preceding breach at the time of acceptance of such rental.

35. END OF TERM. Lessee shall, on the last day of the term or upon the sooner termination of the term, peaceably and quietly surrender and deliver up to Lessor the Demised Premises, broomclean, including all buildings, alterations, rebuildings, replacements, changes, additions and improvements constructed, erected, added or placed by Lessee thereon, with all fixtures (except trade fixtures installed by Lessee) forming a part of the Demised Premises, in good condition and repair, ordinary wear and tear excepted. Lessee hereby waives any notice now or hereafter required by law with respect to vacating the Demised Premises at any such termination date, except as otherwise set forth in this Lease.

36.  <u>SUBLEASES</u>.  Any and all subleases entered into by Lessee shall by their terms be made expressly subject to this Lease and all of the terms and provisions hereof.

37.  <u>SHORT-FORM LEASE</u>.  The parties will, at any time at the request of either one, promptly execute duplicate originals of an instrument, in recordable form, which will constitute a short form of lease setting forth a description of the premises, the term of this Lease, the restrictive covenants and cross-easements set forth in Article 14 and any other portions hereof, except the rental provisions, as either party may request.  If the precise dates of commencement and termination of the term of this Lease are not known at the time of the execution of said short form of lease, the parties will, as soon as they are known, and at the request of either party, execute a supplemental instrument, in recordable form, setting forth the exact dates of commencement and termination of the term.  The party making such request shall pay all costs incurred in connection with recording the same.

38.  <u>OTHER CONDITIONS</u>.  This Lease shall be contingent upon and subject to Lessor's obtaining title to the subject property on or before July 15, 1972.  Should Lessor be unable to secure title upon the terms and conditions set forth herein, then either Lessor or Lessee may by notice in writing to the other cancel this Lease.

39.  <u>PERFORMANCE UNDER PROTEST</u>.  If at any time a dispute shall arise as to any amount or sum of money to be paid by one

-53-



party to the other under the provisions hereof, the party
against whom the obligation to pay the money is asserted shall
have the right to make payment "under protest" and such payment
shall not be regarded as a voluntary payment, and there shall
survive the right on the part of said party to institute suit
for the recovery of such sum.  If it shall be adjudged that
there was no legal obligation on the part of said party to pay
such sum or any part thereof, said party shall be entitled to
recover in addition to court costs and legal fees such sum or
so much thereof as it was not legally required to pay under the
provisions of this Lease; and if at any time a dispute shall
arise between the parties hereto as to any work to be performed
by either of them under the provisions hereof, the party against
whom the obligation to perform the work is asserted may perform
such work and pay the cost thereof "under protest" and the per-
formance of such work shall in no event be regarded as a voluntary
performance and there shall survive the right on the part of said
party to institute suit for the recovery of the cost of such work.
If it shall be adjudged that there was no legal obligation on
the part of said party to perform the same or any part thereof,
said party shall be entitled to recover, in addition to court
costs and legal fees, the cost of such work or the cost of so
much thereof as said party was not legally required to perform
under the provisions of this Lease.

40.  SERVICE OF NOTICE.  Any notice or demand or state-
ment of interest which either party hereto may desire to serve
upon the others in furtherance of any provision of this Lease shall

-54-



be sufficiently served if the same be enclosed in a sealed envelope, which envelope shall be deposited in the United States Post Office, postage prepaid, registered mail, return receipt requested, and addressed in the instance of Lessor, c/o Amos Z. Krausz, 851 Burlway Road, Burlingame, California 94010, and c/o Andrew S. Berwick, Jr., P.O. Box 77143, San Francisco, California 94107, or any other addresses which Lessee may be notified of in writing by Lessor, and in the instance of Lessee to the Demised Premises or such other address which the Lessor may be notified of in writing by Lessee. Such notice shall be deemed to have been served at the time of the mailing thereof; provided, however, that should such notice pertain to the change of address to either of the parties hereto, such notice shall be deemed to have been served upon receipt thereof by the party to whom such notice is given. Whenever any notice is required pursuant to this Lease to be forwarded to Lessee, Lessor shall simultaneously forward a copy of said notice, in the manner aforesaid, to the Guarantor of Lessee's performance under this Lease, addressed to said Guarantor at 111 Eighth Avenue, New York, New York 10011, or to such other address as such Guarantor may hereinafter designate in the manner provided in this paragraph.

41. <u>CONSTRUCTION LANGUAGE</u>. The language in all parts of this Lease shall in all cases be construed as a whole and simply according to its fair meaning and not strictly for or against either the Lessor or the Lessee, and the construction of this Lease and any of its various provisions shall be unaffected by any claim, whether or not justified, that it has been prepared, wholly or in substantial part, by or on behalf of the Lessor.

-55-

45.  <u>INVALIDITY</u>.  The invalidity or unenforceability of any provision of this Lease shall not affect the validity or enforcement or enforceability of the remainder of this Lease.

46.  <u>TIME</u>.  Time is of the essence of this Lease and each and all of its provisions.

47.  <u>SUCCESSORS AND ASSIGNS</u>.

47.01.  This Lease shall inure to the benefit of and be binding upon the heirs, executors, administrators, successors and assigns of Lessor, and each of them, and the successors and assigns of Lessee, always providing that nothing in this paragraph contained shall impair any of the provisions hereinabove set forth inhibiting assignment without written consent of Lessor.

47.02.  In the event that Lessor desires to sell or transfer its interest in the Demised Premises or Shopping Center, or any portion thereof, Lessor shall notify Lessee of the proposed sale or transfer at least ten (10) days prior to the date set for the consummation of such sale or transfer, which notice shall designate the date proposed for such consummation and the name and address of the proposed buyer or transferee. Simultaneously or prior to the date set for such consummation, Lessee shall deliver to Lessor a notice enumerating in reasonable detail, any and all breaches by Lessor then existing, of the terms and conditions of this Lease. At the consummation of the aforesaid sale or transfer, the buyer or transferee of Lessor's interest shall assume all of the obligations of Lessor hereunder from the date of such sale or transfer,





and either the Seller shall hold in trust a sufficient portion
of the proceeds of such sale or transfer to satisfy a money
judgment with regard to the items enumerated by Lessee in the
foregoing notice or in lieu thereof, the purchaser or transferee
shall assume liability with respect to all such enumerated items.

48.  NET RENT.  Except as otherwise specifically pro-
vided for in this Lease, it is the intention of the parties
hereto that the rent payable hereunder shall be net to Lessor,
so that this Lease shall yield, net to Lessor, the rent specified
herein during the entire term of this lease and that all costs,
expenses and obligations of every kind and nature whatsoever
relating to the Demised Premises and Lessee's share of the Facilities
shall be paid by Lessee.

49.  NO BROKER.  Lessor represents that no broker
consummated this Lease on his behalf and Lessor agrees to hold
Lessee harmless against any  claims for brokerage commissions
arising out of any conversations, prior negotiations or other
dealings had by Lessor with any broker.  Lessee represents that
no broker consummated this Lease on his behalf, and Lessee
agrees to hold Lessor harmless against any claims for brokerage
commissions arising out of any conversations prior to negotiations
or other dealings had by Lessee with any broker.

-58-

51. <u>WAIVER OF SUBROGATION</u>.    Each of Lessor and Lessee hereby releases the other from any and all liability or responsibility (to the other or anyone claiming through or under them by way of subrogation or otherwise) for any loss or damage to property caused by fire or any of the extended coverage or supplementary contract casualty even if such fire or other casualty shall have been caused by the fault or negligence of the other party or anyone for whom such party may be responsible; provided, however, that this release shall be applicable in force and effect only with respect to loss or damage occurring during such time as releasor's policies shall contain a clause or endorsement to the effect that any such release shall not adversely affect or impair said policies or prejudice the right of the releasor to recover

thereunder.    Each of Lessor and Lessee agrees that its policy will include such clause or endorsement so long as the same shall be obtainable without cost, or if extra cost shall be charged therefor, so long as the other party pays such extra cost.    If extra costs shall be chargeable therefor, such party shall advise the other thereof and of the amount of the extra costs and the other party, at its election, may pay the same but shall not be obligated to do so.

-59-

52. MISCELLANEOUS. Notwithstanding any provision

in this Lease to the contrary the Lessor represents, covenants

and warrants that:

(a)  No building(s) other than those as and where

delineated on Exhibits A and AA shall be erected

thereon and furthermore none of the aforesaid shall

exceed substantially the size or dimensions set forth

on Exhibits A or AA, nor shall such buildings sub-

stantially extend beyond the building lines delineated

thereon.

(b)  No fences shall be erected on the Shopping Center

or any portion thereof which will prevent ingress and

egress to and from the entire Shopping Center and to

and from the streets, roads or abutting the Shopping

Center otherwise Lessee ~~may cancel and terminate this~~ *shall have the right to seek*

*specific performance and obtain damages*

~~Lease on ten (10) days written notice,~~ except that

Lessor may maintain such barriers on the southerly and

easterly perimeters of Phase II (as Phase II is delineated

on Exhibit A) as now exist thereon or which Lessor may

elect to install thereon until any building on Phase II

(as Phase II is delineated on Exhibit A) shall be open for

business to the public, provided there shall be not less

than 270 car parking facilities on Phase I (as delineated

on Exhibit A).

(c)  Upon completion by Lessor, its successors or assigns

of all of the buildings within the Shopping Center as

delineated on Exhibit AA, there shall be not less than

parking facilities for ~~104~~ 320 cars therein.

53.  EXTENSION OF TIME FOR LESSEE'S PERFORMANCE.

Other than for payment of rent and determination of the Date

of Occupancy, in the event that Lessee shall be delayed or

hindered in or prevented from the performance of any act by

reason of Acts of God, strikes, lockouts, unavailability of

materials, failure of power, restrictive governmental laws

or regulations, riots, insurrections, the act, failure to

act, or default of the Lessor, war or other reason beyond

Lessee's reasonable control, then performance of such act

shall be extended for a period equivalent to the period of

such delay.  Notwithstanding the foregoing, lack of funds

shall not be deemed to be a cause beyond the control of

Lessee.

54.    ENTIRE AGREEMENT.    This instrument contains the entire and only agreement between the parties, and no oral statements or representations or prior written matter not contained in this instrument shall have any force or effect.    This Lease shall not be modified in any way or terminated, except by a writing executed by both parties.

IN WITNESS WHEREOF, the parties hereto have executed these presents in duplicate and affixed their seals hereto as of the day and year first above written.

LESSORS: Jointly and Severally

By: _____
Andrew S. Berwick, Jr.

By: _____
Amos Z. Krausz

LESSEE:

TOYS R US COVINA, INC.

By: _____
Vice President

Attest

By: _____
Assistant Secretary

GUARANTY OF LEASE

INTERSTATE STORES,INC., a Delaware corporation, with its executive offices located at 111 Eighth Avenue, New York, New York 10011, in consideration of the letting by ANDREW S. BERWICK, JR. and AMOS Z. KRAUSZ, as Lessor, of the premises located at

ALMADEN EXPRESSWAY and BLOSSOM HILL ROAD                           in the City of San Jose,  State of California, to TOYS R US COVINA, INC., located at c/o Interstate Stores, Inc., 111 Eighth Avenue, New York, New York 10011, as Lessee, under a certain lease dated

June 16th, 1972, does hereby covenant with the Lessor, personal representatives, administrators, successors or assigns, that if default at any time be made by the named Lessee in any of the covenants and conditions of said Lease, including but not limited to, the payment of the rent contained in such Lease, INTERSTATE STORES, INC. will correct such default, including the payment of all or any part of the rent owing and past due from the Lessee to the Lessor promptly after receipt of written demand therefor from Lessor, its personal representative, administrator, successors or assigns.

It is hereby agreed that no modification or extension granted to the Lessee, its successors and assigns, shall release the undersigned from the Guaranty, and that this Guaranty shall continue in full force and effect as to any renewal, extension or modification of the Lease.  Notwithstanding

- 1 -

foregoing, however, the undersigned shall not be bound by any modification, renewal or extension of the Lease (except for any renewal or extension option provided for in said Lease) unless such modification is executed by, or such renewal or extension option is exercised by a subsidiary or affiliate of the under-signed.

Nothing herein contained shall modify any requirement in the Lease for the giving of notice of default to Lessee.

Notice to INTERSTATE STORES, INC. shall be mailed to:

INTERSTATE STORES, INC.
111 Eighth Avenue
New York, New York  10011

by registered mail, return receipt requested, unless otherwise advised in writing.

IN WITNESS WHEREOF, INTERSTATE STORES, INC. has executed this Guaranty.

INTERSTATE STORES, INC.

By: _____
Vice President

DATED: June 22, 1972.

Attest

By: _____

- 2 -





# RUTH AND GOING

**ENGINEERING – PLANNING – ARCHITECTURE**

I N C.    919 THE ALAMEDA  •  SAN JOSE, CALIFORNIA, 95126  •  297-8273

LEO W. RUTH, JR., C. E., M. E.
E. JACKSON GOING, JR., C. E.
WILLIAM H. BENDER, S. E.
HARRY N. LALOR, C. E.

F. HAZEN MACLAREN, ARCHITECT

June 16, 1972

14,878

**REVISED**
**DESCRIPTION OF TOYS-R-US SITE**
**ALMADEN SQUARE SHOPPING CENTER**

All that certain real property situate in the City of San Jose, County of Santa Clara, State of California, described as follows:

A portion of that certain 8.060 acre parcel of land shown upon that certain map entitled, "Record of Survey Being a Portion of the Rancho San Juan Bautista", filed June 2, 1972, in Book 302 of Maps at page 39, Santa Clara County Records, and being more particularly described as follows:

BEGINNING at the Southeasterly corner of said 8.060 acre parcel; thence from said point of beginning along the Easterly line of said parcel, North 3° 52' 34" West 30.00 feet to a parallel line distant 30.00 feet Northerly, measured at right angles from the Southerly line of said parcel; thence along said parallel line, South 85° 32' 00" West 55.00 feet to the TRUE POINT OF BEGINNING of this description; thence from said true point of beginning continuing along said parallel line, South 85° 32' 00" West 166.00 feet; thence at right angles, North 4° 28' 00" West 201.00 feet; thence at right angles North 85° 32' 00" East 166.00 feet; thence at right angles South 4° 28' 00" East 201.00 feet to the true point of beginning, containing 33,366 square feet or 0.766 acre.

Together with the right to encroach into a strip of land 1.00 feet wide contiguous and adjacent to the exterior boundary of the hereinabove described 0.766 acre parcel with concrete foundations, signs, downspouts and/or any and all appurtenances to a retail store building.

Also together with an outdoor entrance and outdoor display area being a strip of land 20.00 feet wide, Northerly, contiguous and adjacent to the Northerly boundary of the hereinabove described 0.766 acre parcel.

Also together with a loading dock area being a strip of land 33.00 feet wide, Easterly, contiguous and adjacent to the Southerly 95.00 feet of the Easterly boundary of the hereinabove described 0.766 acre parcel.

PORT L. SHAFER
Licensed Land Surveyor #3142

PLS:vr

# EXHIBIT "A-1" "A31"

MAILING ADDRESS: P.O. BOX 4591, SAN JOSE, CALIFORNIA 95126

San Jose, California


### SCHEDULE "T"

1.  A right of way for ingress and egress over the Easterly
12 feet of the Northerly 348.57 feet of the premises as granted
by Deed from Almaden Union School District to Matthew Busanj
Youth Center, Inc., dated September 26, 1947 and recorded
November 10, 1947 in Book 1526 of Official Records, Page 139.

2.  The right to enter the premises for the purpose of main-
taining, repairing and replacing existing public utilities as
reserved in the Deed from the County of Santa Clara to San
Jose Unified School District dated April 12, 1965 and recorded
May 7, 1965 in Book 6948 of Official Records, Page 452.
(Affects Westerly 20 feet, more or less, of the premises.)

3.  Any easements for existing public utilities as disclosed
by the reservations contained in the Deed set forth as
Encumbrance No. 1 above.

4.  Restrictions and Easements as provided in Exhibit "1",
attached hereto, to be recorded as provided therein.

BUT IN NO EVENT SHALL THE LESSORS BE RELIEVED OF ANY OBLIGATIONS UNDER THE
FOREGOING EXCEPTIONS TO TITLE EXCEPT AS EXPRESSLY PROVIDED IN THE LEASE.



EXHIBIT "1"

(TO PURCHASE AGREEMENT)

GRANT DEED AND AGREEMENT
RE RESTRICTIONS AND EASEMENTS

This Agreement, made this        day of            1972,

between Amos Z. Krausz and Andrew S. Berwick, Jr., hereinafter

called "Grantors", and Humble Oil & Refining Company, a Delaware

corporation, hereinafter called "Grantee".

1.  Grantors, for and in consideration of the sum of ten

dollars ($10.00) and other valuable consideration, the receipt

and adequacy of all of which are hereby acknowledged, does hereby

grant and convey to Grantee the following described real estate

situate in the City of San Jose, County of Santa Clara, State of

California, more particularly described as follows:

(copy legal description to be prepared by Surveyor and

approved by Grantor) together with non-exclusive easements for

ingress and egress over and across the following described parcels

of real property:

(copy in easement descriptions as prepared by Surveyor as

authorized by Grantor) together with the interest of the Grantors

in all roads, streets and alleys adjoining said parcel referred to

above, subject to the following covenants, conditions and restric-

tions of record:

The right to enter the premises for the purpose of maintain-

ing, repairing and replacing existing public utilities as reserved

in the Deed from the County of Santa Clara to San Jose Unified

School District dated April 12, 1965 and recorded May 7, 1965 in

Book 6948 of Official Records, Page 452.  (Affects Westerly 20 feet,

more or less, of the premises).

A.  Grantors hereby warrant that on the date of recordation

of this Grant Deed, said property abuts on Almaden Expressway for

the full length of the westerly side thereof and on Blossom Hill

Road for the full length of the northerly side thereof.

*PART OF SCHEDULE "T"*

-1-

B.  Grantee hereby agrees for itself, its successors and assigns that Grantors retain an easement, appurtenant to the property described in Paragraph 2 hereof, for the construction, maintenance and installation of a sign, and providing electrical service therefor, over and across that area described as follows:

(copy description as prepared by Surveyor and approved by Grantor), provided however, that if a sign shall not have been erected within five years from the date of this Agreement, then such easement shall terminate without any reserved rights in Grantors, their successors or assigns.  Any sign which may be located in such easement area shall be subject to the following restrictions:

i)  Such sign shall be for the exclusive use of tenants on the property described in Paragraph 2 hereof and for identifying the shopping center to be constructed thereon;

ii)  Such sign shall be located so it will not obscure Grantee's identification signs to the motoring public proceeding along Almaden Expressway and Blossom Hill Road;

iii)  The bottom of the such sign shall be not less than twenty feet above ground level;

iv)  The maximum square foot sign area and number of signs permitted by the City of San Jose sign ordinance for identification of Grantee's operations on the parcel conveyed herein will not be adversely affected by such identification sign.

2.  That as long as the property described in Paragraph 2 hereof is utilized for retail business operation and/or a shopping center, Grantee will not alter the size and location of the building and improvements on the parcel conveyed herein in a way that will tend to reduce the visibility of the shopping center buildings to the motoring public on Almaden Expressway and Blossom Hill Road to any greater extent than the initial construction of such improvements by Grantee.

*PART OF SCHEDULE "T"*

C.  Grantors and Grantee do hereby declare, covenant and agree each with the other, that it is to their mutual benefit that the property boundary between the parcel conveyed herein and property described in Paragraph D hereof shall permit free access consistent with the uses of the respective properties, and Grantors and Grantee agree, for themselves, their successors and assigns that they shall, at all times, keep said boundary open as passageway for vehicular and pedestrian traffic between the respective parcels of property.

D.  Grantors, for themselves, their successors and assigns, agree that the property described hereinafter is restricted to prohibit the sale of motor fuel, and that Grantor, their successors and assigns, will not sell or permit the sale by any third party, of motor fuel from said property.  This restriction shall terminate when the property conveyed herein is no longer used by Grantee for sale of motor fuel.  Said property is described as follows:

(copy second time around the description of remainder of parcel being acquired from San Jose Unified School District).

IN WITNESS WHEREOF, Grantors and Grantee have executed this instrument as of the day and year first above written.

_____
Amos Z. Krausz

_____
Andrew S. Berwick, Jr.

                    Grantors

Humble Oil & Refining Company,
a Delaware corporation

By _____
   Attorney in Fact

                    Grantee

(Notarial Acknowledgements)

*PART OF SCHEDULE "T"*

-3-

## MEMORANDUM OF LEASE

THIS MEMORANDUM OF LEASE is made and executed on <u>the 16th</u>
<u>day of June</u>, 1972, by and between AMOS S. KRAUSZ, an individual

# RUTH AND GOING

ENGINEERING — PLANNING — ARCHITECTURE
919 THE ALAMEDA • SAN JOSE, CALIFORNIA, 95126 • 297-8273

LEO W. RUTH, JR., C. E., M. E.
E. JACKSON GOING, JR., C. E.
WILLIAM H. BENDER, S. E.
HARRY N. LALOR, C. E.

F. HAZEN MACLAREN, ARCHITECT

June 12, 1972                                                           14,879

### DESCRIPTION OF SERVICE STATION SITE
### ALMADEN SQUARE SHOPPING CENTER

All that certain real property situate in the City of San Jose, County of Santa
Clara, State of California, described as follows:

A portion of that certain 8.060 acre parcel of land shown upon that
certain map entitled "Record of Survey Being a Portion of the Rancho
San Juan Bautista" filed June 2, 1972 in Book 302 of Maps at page 39,
Santa Clara County Records, and being more particularly described as
follows:

BEGINNING at the Southwesterly corner of said 8.060 acre parcel in the
Easterly line of Almaden Expressway as shown on said map; thence from
said point of beginning along the Southerly line of said parcel, North
85° 32' 00" East 12.00 feet to the point of intersection with a
parallel line distant 12.00 feet Easterly, measured at right angles
from said Easterly line of said Expressway; thence along said parallel
line, the two following courses and distances: North 4° 28' 00" West
142.88 feet and North 3° 46' 45" West 257.14 feet to the TRUE POINT OF
BEGINNING of this description; thence from said true point of beginning
parallel with said Southerly line of said 8.060 acre parcel, North 85°
32' 00" East 211.36 feet; thence parallel with the most Easterly line
of said 8.060 acre parcel, North 3° 52' 34" West 178.48 feet to the
Southerly line of Blossom Hill Road as said Road is shown on said map;
thence Westerly along said last named Southerly line along an arc of
a curve to the left from a tangent which bears North 85° 05' 28" West
with a radius of 1935.00 feet through a central angle of 4° 12' 09" an
arc distance of 141.93 feet to a point of compound curvature; thence
leaving said Southerly line Southwesterly along an arc of a curve to the
left with a radius of 65.00 feet through a central angle of 94° 29' 08"
an arc distance of 107.19 feet to a point of tangency in said parallel
line distant 12.00 feet Easterly, measured at right angles from said
Easterly line of Almaden Expressway; thence along said parallel line,
South 3° 46' 45" East 132.49 feet to the true point of beginning, containing
0.906 acre.

TOGETHER WITH:

An easement for the purpose of ingress and egress and vehicular traffic,
said easement being more particularly described as follows:

BEGINNING at the Northeasterly corner of the hereinabove described 0.906
acre parcel in the Southerly line of Blossom Hill Road; thence from said
point of beginning along the Easterly line of the hereinabove described
0.906 acre parcel, South 3° 52' 34" East 75.00 feet; thence leaving said

*PART OF SCHEDULE "T"*

business invitees.

4.   Nothing contained in Paragraphs 2 and 3 hereof shall be deemed to be a gift or dedication of any portion of the Shopping Center (as defined in the Lease) to the general public or for any public use or purpose whatsoever, it being the intention of the parties hereto that the provisions of said Paragraphs be for the exclusive benefit of the parties hereto and their successors and assigns, and that nothing herein, express or implied, shall confer upon any person, other than the parties hereto and their heirs, administrators, legal representatives, successors and assigns, any rights or remedies under or by reason of thereof.

5.   The covenants set forth in the Lease shall run with the land commencing with the date of the execution of said unrecorded Lease and shall continue during the term of the Lease and any renewals thereof.   In the event of any breach or default under this Paragraph, and the failure of Lessor to cure the same after 60 days written notice thereof, in addition to any other remedies which Lessee may have at law or equity, until such time that such breach or default is cured, Lessee shall not be required to pay the minimum rent or other charges and payments provided herein, and the rental provided for shall be adjusted as set forth in said unrecorded Lease.   Further, in addition to the foregoing, Lessor does herewith authorize Lessee to bring such proceedings in Lessor's name against other persons in violation hereof.   Lessor does herewith agree to execute and deliver any documents which may be required by Lessee in connection with the foregoing.   All terms and provisions of the Lease are hereby incorporated by reference.

6.   In all instances where the provisions of this Memorandum of Lease are inconsistent with the provisions of the Lease, the provisions of the  Lease shall prevail.

7.   Except as otherwise specifically provided in the Lease, the terms and provisions of this Memorandum shall enure to the benefit of and be binding upon the parties hereto, and their

- 2 -

respective successors, assigns, executors, administrators and heirs.

LESSORS, JOINTLY AND SEVERALLY

_____
AMOS S. KRAUSZ, an individual

_____
ANDREW S. BERWICK, JR., an individual

LESSOR

TOYS "R" US COVINA, INC.,
a California corporation

By_____
            Vice President

By_____
         Assistant Secretary

LESSEE

# EXHIBIT B

# TOYS "R" US ®

**NATIONAL OFFICES: 461 FROM ROAD, PARAMUS, NJ 07652-3524**

GEOFFREY

                                              VIA: Certified Mail,
                                                   Return Receipt Requested

September 11, 1996

Mr. Amos Z. Krausz
Mr. Andrew S. Berwick, Jr.
c/o Berwick-Krausz
P.O. Box 2844
651 Gateway Blvd.
Suite 1010
South San Francisco, CA  94083

        RE:  TOYS "R" US #5818
             SAN JOSE (ALMADEN), CA

Dear Messrs. Krausz and Berwick:

Reference is hereby made to that certain Lease dated June 16,
1972, as amended by Lease Amendment dated May 9, 1994 ("Lease"),
between Amos Z. Krausz and Andrew S. Berwick, Jr. ("Landlord")
and TRU Properties, Inc. ("Tenant") [successor in interest to
Toys "R" Us, Inc., now know as Toys "R" Us-Delaware, Inc.].
Unless otherwise indicated, all terms used herein shall have the
same respective meanings as in the Lease.

The aforementioned Lease expires on January 31, 1998.  Notice is
hereby given pursuant to the Lease, Tenant hereby exercises its
option to extend the term thereof to January 31, 2008.

Very truly yours,

TRU Properties, Inc.

Gayle Aertker
Vice President - Real Estate

/kc

CC:  Dan Abel
     Mike Tumolo

r:\t:.r\krau.sao

# EXHIBIT ß

# EXHIBIT C



RECD JUN 1 3 2007

973-617-4172

June 12, 2007

<u>VIA: CERTIFIED MAIL RETURN</u>
<u>RECEIPT REQUESTED ARTICLE NO.</u>
<u>7099 3400 0001 9278 0735 & DHL EXPRESS</u>

Berwick-Krausz
44 Montgomery Street, Suite 300
San Francisco, CA 94104

RE:    Toys 'R' Us #5818
       Almaden, CA

Dear Sir/Madam:

Reference is hereby made to that certain Lease dated June 16, 1972, as amended, ("Lease")
between Berwick-Krausz, successor-in-interest to Amos Z. Krausz and Andrew S. Berwick, Jr.
("Landlord") and TRU 2005 RE I, LLC, successor-in-interest to Toys "R" Us-Covina, Inc.
("Tenant"). Unless otherwise indicated, all terms used herein shall have the same respective
meanings as in the Lease.

The aforementioned Lease expires on January 31, 2008. Notice is hereby given pursuant to the
Lease; Tenant hereby exercises its option to extend the term thereof to January 31, 2018.

Very truly yours,

David P. Picot
Vice President – Real Estate Design & Construction

rh/

cc: The Krausz Companies, Inc. (via: DHL Express)
       1030 Main Street, Suite 207
       St. Helena, CA 94574
    John Natoli
    Evelyn Sullivan

31825-1

Toys"R"Us, Inc
One Geoffrey Way, Legal Department, Wayne, NJ 07470  tel: 973-617-3500  fax: 973-617-4044

EXHIBIT C